(Decided 10th March, 1886.)

---

## Louis F. Beeler *vs.* William Henry Jackson.

### *Slander—Privileged communication—Malice.*

J. having been discharged from the service of the Baltimore and Ohio Railroad Company, at Locust Point, applied to B. the general agent who had entire charge of the station, to know the reason for his discharge; B. as alleged replied: "Stealing fruit, fish, nuts, breaking up car doors and taking them home;" also, "you have been seen eating nuts and herrings." At this interview, there were five other men present who had been discharged at the same time with J. and in reply to the same question from one of them, B. as alleged, said: "You are all discharged under one charge." There were clerks in the next office, and were within hearing, the door

between being open. Beside the men discharged, B. and his confidential clerk; were the only persons present in the room where the conversation took place. In an action of slander brought by J. against B., it was HELD:

1st. That upon the inquiry made, it was but simple justice that B. should truthfully and frankly tell J. the reason for his discharge. It was a proper and legitimate occasion for him to speak freely and without reserve.

2nd. That if the answer was given in truth, honesty and fairness, B. was relieved from all injurious consequences on account thereof— within such limits it was a privileged communication.

3rd. That if, however, B. used the occasion as an opportunity to wreak his ill-will upon J., to abuse and villify him, and to injure him in the estimation of his neighbors, he should be held to a just responsibility.

4th. That the question of malice was not proper to be submitted to the jury.

When the words alleged to be slanderous, are embraced in the class of privileged communications, the plaintiff is bound to prove the existence of malice as the real motive of the defendant's language. But it is not necessary to prove that there was personal spite or ill-will towards the plaintiff.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the. Court. The words charged in the first count of the declaration to have been spoken by the defendant to or concerning the plaintiff, were : " You are discharged for stealing fish, nuts, and breaking off car doors and taking them home ;" those charged in the second count to have been spoken, were : " You have been seen eating nuts and herrings."

*Exception.*—The plaintiff offered the four following prayers :

1. If the jury find from the evidence that the defendant, Louis F. Beeler, on the 28th day of March, 1881, in the presence of several other persons, spoke to or concerning the plaintiff, the words charged in the first count of the declaration, and that in so doing the defendant acted maliciously, then the plaintiff is entitled to recover.

2. If the jury find that on the 28th day of March, 1881, the defendant in the presence and hearing of several other persons, spoke to or concerning the plaintiff, the words as charged in the second count of the declaration, and that he meant thereby that the plaintiff had been guilty of stealing the articles mentioned, and that in so speaking the defendant acted maliciously, then the plaintiff is entitled to recover.

3. In explanation of the term "maliciously" used in the plaintiff's first and second prayers, the jury are instructed that they need not find that the defendant was actuated by any ill-will or hatred towards the plaintiff; but if they find from all the circumstances of the case that the defendant acted in a reckless and improvident manner and without proper inquiry, and used the language set forth in the first count of the declaration, and that said language was not justified by the reports made to him, and on which he professed to have acted, then they are at liberty to find that the defendant acted maliciously.

4. If the jury find for the plaintiff, then the measure of damages is such a sum as they may find will compensate the plaintiff for the injury to his feelings, character and reputation, and if they find that the defendant acted with reckless disregard to the rights of the plaintiff, and maliciously, as defined by the plaintiff's third prayer, they may award in addition such punitive damages as the conduct of the defendant deserves.

The defendant offered six prayers; the first and second of which, as follows, need only be reported :

1. That the plaintiff has offered no evidence legally sufficient to entitle him to recover in this action.

2. That under the pleadings and evidence in this case, the plaintiff is not entitled to recover.

The defendant excepted specially to the granting of the plaintiff's prayers, and to each of them, on the ground that the plaintiff had offered no evidence legally sufficient to sustain them.

The Court (STEWART, J.,) granted the prayers of the plaintiff and refused the defendant's first, second, fifth and sixth prayers, and modified his third and fourth prayers. The defendant excepted. The jury gave a verdict for the plaintiff for $500, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, RITCHIE and BRYAN, J.

*W. Irvine Cross,* and *John K. Cowen,* for the appellant.

*W. L. Marbury,* and *J. Upshur Dennis,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

The appellee, plaintiff below, brought an action of slander against the appellant. The words alleged to have been spoken were these: "You are discharged for stealing fish, nuts and breaking off car doors and taking them home;" also these: "You have been seen eating nuts and herrings." Which it is averred meant that he had stolen these things.

The plaintiff testified in his own behalf that in March, 1881, he was in the service of the Baltimore and Ohio Railroad Company at Locust Point, and had been for six or seven months previously to that time, and that the defendant was the general agent who had entire charge of the station; that he was discharged from the service of the company; and that he applied to the defendant to know the reason of his discharge; and that defendant replied "stealing fruit, fish, nuts and breaking up car doors and taking them home." He further testified that there were five other men present who had been discharged at the same time, and in reply to the same question from one of them, the defendant said "You are all discharged under one charge;" there were clerks in the next office,

the door was open and they were within hearing; the only persons in the room where the conversation took place were the discharged men, and the defendant and his confidential clerk O'Neill. Another witness, one of the discharged men, testified that the defendant appeared to be excited and angry. It was very natural that the plaintiff should wish to know why he was discharged; and it was but simple justice that the defendant should truthfully and frankly tell him the reason. It was in the nature of a social duty that he should do so. It was a proper and legitimate occasion for him to speak freely and without reserve. In order to relieve him from all embarrassment, the law shields him from any injurious consequences on account of his answer; provided it is given in truth, honesty and fairness. Within these limits, it is a priviledged communication. If however, he uses the occasion as an opportunity to wreak his ill-will upon the questioner, to abuse and villify him, and to injure him in the estimation of his neighbors, he will be held to a just responsibility. He must answer the question, simply as a mode of giving to the questioner the information which he ought justly and rightfully to have. When the words alleged to be slanderous, are embraced in the class of privileged communications, it is shown by a great number of authorities that the plaintiff is bound to prove the existence of malice as the real motive of the defendant's language. But it is not necessary to prove that there was personal spite or ill-will towards the plaintiff. It was held in *Garrett vs. Dickerson*, 19 *Md.*, 450, that "evidence of any act or circumstance tending to show the want of good faith may be offered to show the existence of malice."

The evidence for the defendant tended to show that there had been a great many pilferings of a petty character from the freight cars, and that defendant had employed a detective, who was in the service of the Balti-

more and Ohio Railroad Company, to ascertain the guilty parties, and that he reported the plaintiff and several others as having committed the depredations, and that upon his report the persons accused were dismissed from the service of the company by the defendant. We have not found in the record any fact or circumstance which tends to show a want of good faith on the part of the defendant in acting on the report of the detective; or that in answering the inquiry addressed to him by the plaintiff, he exceeded the requirements of the occasion. He would not have been justified in speaking to other persons as he did; but the plaintiff sought information of him, and he gave it. It is true other persons were present, and those in the next room were within the sound of his voice; the plaintiff, however, surely cannot complain that his question was answered when and where it was asked. It is not a question in this case whether the plaintiff was guilty of the charges against him, but simply whether the defendant was influenced by malice when he gave the plaintiff the answer in question. It is stated in the evidence that the defendant appeared to be excited and angry; but we must test the good faith of his answer by the character of the information which had been furnished to him. He may have committed an error of judgment; but he had a right honestly and fairly to form and express his own opinion, and was required to do so in the discharge of the duties of his position. The defendant denied having used the language attributed to him, and he is sustained in his denial by another witness. In deciding the question which we have been considering, we are, however, confined to the affirmative testimony on this point. The question of malice ought not to have been left to the jury; and as a special exception was filed to the plaintiff's prayers, the judgment must be reversed.

*Judgment reversed without*
*awarding new trial.*

(Decided 10th March, 1886.)