10851

SWITZER v. AMERICAN RY. EXPRESS CO. *ET AL.*
(112 S. E. 110)

1.   LIBEL AND SLANDER—COMMUNICATION MADE IN INVESTIGATION FOR CRIME HELD PRIVILEGED.—Communications which would otherwise be slanderous, made in investigation of a crime for the purpose of detecting the criminal, are privileged.

---

NOTE: On the question of privilege as to communications made in response to inquiries made by person defamed, as libel and slander see note in 46 L. R. A. (N. S.) 104.

2. LIBEL AND SLANDER—WHETHER FACTS MAKING COMMUNICATIONS
PRIVILEGED WERE ESTABLISHED HELD QUESTION FOR JURY.—Where
there was evidence that the alleged slanderer, while investigating
a robbery for defendant company, insinuated that plaintiff com-
mitted the robbery, whether the malice implied from the speaking
of the alleged slanderous words was rebutted by the evidence that
the words were spoken on a proper occasion, in good faith and for
reasonable cause, by one engaged in the discharge of a legal or
moral duty, was a question for the jury.

3. LIBEL AND SLANDER—PRIVILEGED OCCASION AFFORDS ONLY A PRE-
SUMPTION OF FACT REBUTTING MALICE.—While in an action for
slander a privileged occasion affords a prima facie presumption to
rebut the inference of malice, and plaintiff would fail without fur-
ther proof, it is only a presumption of fact for the jury.

4. LIBEL AND SLANDER—VERDICT DIRECTED ON THEORY OF PRIVILEGED
COMMUNICATION ONLY WHEN NO OTHER REASONABLE INFERENCE
CAN BE DRAWN.—In an action for slander, a directed verdict should
be granted on the theory of a privileged communication only
where the evidence supported no other reasonable inference except
the truth of the essential elements of this defense.

5. LIBEL AND SLANDER—VERDICT FOR ACTUAL DAMAGES ONLY NEGA-
TIVED EXPRESS MALICE BUT NOT PRESUMED MALICE.—In an action
for slander, where the defense was based on the theory of a priv-
ileged communication, a verdict for actual damages only negatived
express malice, but was consistent with a finding that the malice
presumed from the speaking of the words was not rebutted.

6. LIBEL AND SLANDER—UNPRIVILEGED STATEMENT ABOUT PLAINTIFF
MADE BY ONE PARTY AND HEARD BY HIS COEMPLOYEE IN A JOINT
TASK HELD SUFFICIENT PUBLICATION.—Where two employees were
investigating a robbery of their employer an unprivileged slan-
derous statement made by one and overheard by the other, charg-
ing plaintiff with the robbery, was a sufficient publication.

7. LIBEL AND SLANDER—PUBLICATION TO COEMPLOYEE ENGAGED IN
JOINT TASK FOR COMMON MASTER HELD SLANDEROUS, UNLESS MADE
IN GOOD FAITH.—A defamatory statement concerning plaintiff,
made by an employee to a coemployee, engaged in a common
task, is publication of a slander, unless made in good faith, in the
course of an undertaking for the common master which entailed
the discharge of a legal, social, or moral duty.

Before M. L. SMITH, Special Judge, Richland. April,
1921. Affirmed.

Action by W. H. Switzer against American Railway Ex-
press Company and L. S. Tevis. From judgment for
plaintiff the defendants appeal.

*Messrs. Barron, McKay, Frierson & McCants,* for appellants, cite: *Inquiries in good faith in an inquiry regarding a crime are privileged*: Newell "Slander and Libel" (3rd Ed.), Sec. 597. *Privileged communications*: 122 La., 644; 48 So., 136; 21 L. R. A. (N. S.) 33; 189 S. W., 861 (Tenn.) Ann. Cas. 1917 E., 695; 51 S. E., 646; 9 British R. C., 353; 1 British R. C., 444; 181 Pac., 680; 5 A. L. R., 451; 153 N. Y., 214; 47 N. E., 265; 183 N. W., 516 (Minn.):

*Messrs. E. J. Best* and *Thos. E. Hair,* for respondent. No citations.

April 11, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

In an action for slander, the plaintiff recovered judgment for actual damages. The defendants appeal and assign error (1) in the refusal of the trial Judge to grant motions for non-suit and for a directed verdict, and (2) in refusal to give the request to charge, which will be hereafter noted.

The evidence for plaintiff tended to establish the following facts: The plaintiff, W. H. Switzer, a young man about 21 years of age, had formerly been in the employ of the defendant, American Railway Express Company, in the several capacities of delivery clerk, messenger, and local agent. In July, 1920, he was made local agent at Estill, a town of about 2,000 inhabitants. In the latter part of September, 1921, the plaintiff, Switzer, was "checked out" of the Estill office, at which time he owed the Express Company over $1,000.00, on account of charges which he had failed to collect upon the Company's business. He made up the deficit by securing the money from his people at Saluda. Plaintiff had been accompanied to Saluda for that purpose by the defendant,

L. S. Tevis, and testifies, in this connection, that he had been told that if he did not get the money they would put him in jail. On Friday night, October 8, 1920, the express office at Estill was robbed. The following day the defendant, L. S. Tevis, a special agent, and R. N. McLeod, a route agent of the defendant Express Company, were in Estill for the purpose of investigating the robbery. The plaintiff was then staying at the hotel in Estill, his business being to collect money due him by parties to whom he had extended credit as express agent. J. A. Wilkinson, who had been installed as local agent at Estill to succeed Switzer, was in charge of the local office at the time of the robbery. After talking the robbery over with Local Agent Wilkinson, Messrs. Tevis and McLeod, accompanied by Wilkinson, interviewed the chief of police, who gave them information tending to indicate that the plaintiff could not have been concerned in the robbery. The following morning (Sunday), Messrs. Tevis and McLeod requested the plaintiff to accompany them. Mr. Tevis asked Mr. Wilkinson, the local agent to retire from the room. It was in the course of this interview that the alleged slanderous words were used by the defendant, Tevis, in the presence of Route Agent McLeod and also in the presence or in the hearing of Local Agent Wilkinson. The statement was:

"Well, it does look suspicious of you, being in Estill at the time of the robbery took place, knowing the details of the office as run on the inside and outside, too," etc.

The defendants contend that the trial Judge erred in refusing the motions for non-suit, and for the direction of a verdict in favor of the defendants, upon the ground that there was no publication of the alleged slander. The contention rests upon the doctrine of qualified privilege. It is urged that at the time the alleged slander was uttered, the defendant, Tevis, and Route Agent McLeod, assisted by Local Agent Wilkinson, were engaged in the business of trying

to ferret out a crime and to discover the person who robbed the express company's office at Estill, and that the alleged slander, if uttered, clearly falls within the principle thus stated by Mr. Newell in his work on Slander (3rd. Ed.) § 3597:

"Upon grounds of public policy, communications which would otherwise be slanderous are protected as privileged, if they are made in good faith in the prosecution of an inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing to punishment the criminal."

Since there was no evidence establishing or tending to establish that the alleged slanderous remarks were communicated to any other persons than Route Agent McLeod and Local Agent Wilkinson, defendants contend that the trial Judge should have held that the evidence was susceptible of no other reasonable inference than that the communication was made upon a privileged occasion, to persons privileged to hear.

We do not think that position can be sustained. 1, 2 While unquestionably the protection of privilege extends generally to remarks made in the prosecution of an inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing to punishment the criminal, whether the remarks in the case at bar were so made as to bring them within the protection of that privilege depended upon the establishment of certain essential facts.

"Whether the facts which give the publication the privileged character claimed for it are established by the evidence is a question for the jury." 25 Cyc., 547.

The fallacy of defendants' argument lies in the assumption that it was competent for the trial Court to determine that the facts upon which the privilege was predicated had been proved. The guiding principles are thus clearly

16 S. C.—119

stated by Judge Earle, of the old Court of Appeals, in the case of *Smith v. Youmans*, 3 Hill, 85, as follows:

"From the speaking of slanderous words, that are actionable in themselves, the law implies that they are false, and that they are malicious. It is for the defendant to prove them true; or to rebut the presumption of malice, by showing that they were spoken on such an occasion, or under such circumstances; as to excuse the speaking, and to render them innocent.* * *

* * * In general, however, where it appears, on the plaintiff's showing, or on evidence produced by the defendant, that the publication was made on such an occasion, or under such circumstances as have been specified, and that the words were spoken *bona fide* in the discharge of some legal or moral duty, rendered necessary by the exigencies of society, the occasion affords a *prima facie* presumption to rebut the inference of malice, and the plaintiff would fail without further proof. See Stark. Evid. 4, p. 863, and the case there cited. Malice is, however, the essential ingredient which entitles the plaintiff to recover. * * * The circumstances themselves, the manner of speaking, the temper manifested, without extrinsic evidence, may be enough to indicate malice, and to deprive the defendant of the benefit he might have derived from the occasion of the speaking. But this is always a question for the jury, whether the words spoken, if actionable in themselves, were spoken maliciously, and without a defamatory intention."

The trend of modern judicial opinion is in accord 3, 4 with the principles thus enunciated. 17 R. C. L. p. 418, § 178. and cases cited. The Courts of other jurisdictions differ as to the extent of the trial Court's power and duty to determine whether such *prima facie* showing of privilege has been made in a given case as will require the proof of express malice, but, under the settled law of

this State, there is no room for doubt as to the respective provinces of Court and jury. While, as stated by Judge Earle in the case of *Smith v. Youmans, supra,* the privileged "occasion affords a *prima facie* presumption to rebut the inference of malice, and the plaintiff would fail without further proof," the presumption thus raised is a presumption or inference of fact sanctioned by law, to be applied by the jury under appropriate instructions of the Court. It is true, of course, that a non-suit may be granted or a verdict directed when the evidence establishes a defense to the action.

"But, in that case, the evidence in support of the defense must be open to no other reasonable inference than the truth of the essential elements of fact constituting the defense." *Vermillion v. Woman's College of Due West,* 104 S. C., 200; 88 S. E., 650.

As to the essential elements of fact entering into the defense of privilege, interposed by the defendants here, Mr. Justice Brown, in the case of *Alexander v. Vann,* 180 N. C., 189; 104 S. E., 361, uses this language:

"Mr. Newell says (Section 497), that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or proper cause."

In the case of *Sheftall v. Central of Ga. Ry. Co.,* 123 Ga., 593, 51 S. E., 648, it is said:

"To make the defense of privilege complete * * * good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and to proper parties only, must appear. The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege. All of these questions are, however, questions of fact for the jury to determine according

to circumstances of each case under appropriate instructions from the Court."

The plaintiff testified that he knew that Tevis, McLeod, and Wilkinson were in the employ of the express company and that Messrs. Tevis and McLeod had some authority and duty with respect to the investigation of "robberies." If that testimony could be construed as committing the plaintiff to an admission of the authority and duty of Tevis and McLeod to investigate the "robbery" of the express office, it still remains for the defendants to establish the other facts essential to the creation of the privilege claimed. Whether the malice implied from the speaking of the alleged slanderous words was rebutted by evidence tending to establish that the words were spoken upon a proper occasion, in good faith, for reasonable cause, by one engaged in the discharge of a legal or moral duty, was clearly an issue of fact for the jury.

The jury's verdict for actual damages—negativing as argued, a finding of express malice—was also entirely consistent with a finding that the presumption of malice had not been rebutted. If, as a matter of fact, the defendant, Tevis, was not privileged to make the alleged slanderous statement, the publication to either McLeod or Wilkinson would be sufficient to render a slander actionable. In that view of the case, it is immaterial whether Wilkinson had such interest or duty with respect to the communication as would otherwise have entitled him to hear it. But there is the further consideration in this connection that testimony was adduced by defendants themselves tending to refute the contention of fact that Wilkinson was so engaged in a joint and common task, in behalf of the common employer, the express company, as to preclude him from occupying the relation of a third party. The fact that Wilkinson had been requested by Mr. Tevis to leave the room on the occasion of the al-

leged slanderous remarks would tend to controvert defendants' contention that he was engaged with Tevis and McLeod as a fellow employee, with a like interest and duty in the privileged business of investigating the crime. Upon the whole evidence, there was no error in refusing the motions for non-suit and for a direction of a verdict.

The remaining ground of appeal imputes error in the failure of the trial Judge to charge the following request:

"Where two or more persons are employed in a certain undertaking by one common master, which is a corporation, and the duties of those persons in the conduct of the ordinary business of the company (on which they are engaged) requires them to act together for the common master, then a statement made by one of them in the presence of another or others of them would not constitute a publication of a slander."

We do not think the proposition embodied in this request is sound. A defamatory statement made under the conditions indicated would constitute the publication of a slander unless uttered in good faith, in the course of an undertaking for the common master, which entailed the discharge of a legal, social, or moral duty. *Smith v. Youmans, supra.* The request could not properly have been given without qualification. But aside from that the principle of law covered by the rejected request was fully and clearly charged by the Circuit Judge in giving the defendants' second and third requests.

For the reasons indicated, the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (dissenting): The facts briefly stated are as folows: The plaintiff had been employed by the defendant as agent at Estill, S. C. Taking a charit-

able view of his conduct, he had been too indulgent with patrons of the office in the matter of extending credit to them, unauthorized by the company. When called upon to account in September, 1920, he was in default about $1,700.00. Under threat of prosecution criminally, he, with the assistance of the members of his family, raised the money and settled with the Company, as he. says, but this is denied by the company. He was discharged, and one Wilkinson put in his place. Although discharged, and his home was at Saluda, the plaintiff remained at Estill for several days, without employment and staying at the hotel. On the night of October 8, 1920, the office of the company was broken into and the cash found therein, about $7,500.00 stolen. The burglary is supposed to have occurred about 7 or 8 o'clock p. m. The agent Wilkinson notified McLeod, route agent of the company, that the robbery had taken place. The following day McLeod, with the defendant, Tevis, special agent of the company, arrived at Estill to investigate the affair. On the afternoon of that day, the 9th, their inquiries developed the imformation that Switzer, the plaintiff, was absent from town, visiting a young lady, about the time the robbery was supposed to have been committed. The next morning Tevis saw Switzer at the hotel, and invited him to go with him and McLeod to the express office, Switzer knowing that the interview was in connection with the robbery. Switzer made no objection to going, and the three went together to the office. When they were seated for the interview, Tevis requested the agent Wilkinson to retire from the room. Tevis and McLeod both testified that Wilkinson went through the door and shut the door after him. Switzer testified that Wilkinson did not close the door; that "he left the room," though he was "by the room door," which was open; that "he stood by the door" while the conversation between him and Tevis proceeded. The account

of the conversation given by Switzer is exceedingly important.    Quoting from his testimony:

. "They asked me where I was on Friday night of the robbery.    I told them I was at Lena, about a mile and a half from Estill.    And they asked me on what particular business I was at Lena.    I told them I had called to see a young lady.    They went on to say a robbery had taken place at the office.    When I used the word 'they' I refer to Mr. Tevis.    I asked them if they thought I had committed the crime, and Mr. Tevis said, 'Well, it does look suspicious of you being in Estill at the time the robbery took place, knowing the details of the office as run on the inside and the outside, too, but I might find the people you were visiting in Lena the night before and the night the robbery took place.'    So I told them the people I was visiting in Lena, and they left."

The slanderous words were denied by Tevis and McLeod.

The defendant moved for a non-suit upon the grounds: (1) That the words were used under circumstances showing that the occasion was one of qualified privilege; (2) that there was no evidence tending to show malice on the part of the defendant's agent and that therefore the communication was privileged; (3) that there was no evidence tending to show a publication of the alleged slander. The motion was refused, as also was a motion at the close of all the testimony for a directed verdict.    The jury rendered a most remarkable verdict.    Notwithstanding the fact that the liability of the defendant company was based upon the slander uttered by its agent, Tevis, the verdict was for $35.40 against Tevis and $1,400.00 against the company, stated to be actual damages in each instance.    It should have been set aside upon this ground, if a motion had been made to that end.

The appeal calls for a review of the order refusing motion for non-suit and the order refusing motion for a directed verdict. The fifth exception assigns error in the refusal of the defendants' first request. It is satisfactorily disposed of in the leading opinion. There remains therefore, for discussion, only the propriety of refusing the above motions; and, as they were made upon the same grounds, the discussion will be confined to the motion for a directed verdict.

It is important to bear in mind the distinction between a qualifiedly privileged "occasion" and a qualifiedly privileged "communication." The latter cannot exist without the former; though the former may be employed by the slanderer as the opportunity for venting his spleen, and may therefore exist without the latter.

The questions that arise in the consideration of the appeal are: (1) Was the occasion upon which the alleged slander occurred one of qualified privilege? (2) Was the "communication," alleged to have been slanderous, one of qualified privilege; this question depending upon the further question whether or not, the "occasion" being shown to have been one of qualified privilege, the occasion was so abused, or its bounds so exceeded by ill motive, as to deprive the communication of the qualifiedly privileged character which is presumed by the fact of its utterance upon a qualifiedly privileged occasion? (3) If the communication, unrelieved by a qualified privilege, or the absence of malice, was slanderous, was there any evidence tending to establish the fact of the publication of the defamatory expression, an element essential to constitute actionable slander?

(1) As to the first question. The office of the company had been burglarized; the local agent had telegraphed the route agent of the fact; the route agent got in touch with the special agent, whose particular duty was to inves-

tigate promptly such occurrences. The special agent and the route agent hurried to the scene of the burglarly and began an investigation. They invited the plaintiff, their former agent, to go with them to the office for an interview, as he testified, "about the robberies." The interview being prompted by a duty which the agent owed to the company and in which his principal had an interest, presented an occasion, unquestionably, of qualified privilege.

(2) As to the second question: The distinction between communications absolutely and qualifiedly privileged is thus clearly stated in 25 Cyc., 375:

"An absolutely privileged communication is one for which an action will not lie, even though the words are published maliciously and with knowledge of their falsity, whereas, a qualifiedly privileged communication is one which is *prima facie* privileged only and in which the privilege may be lost by proof of malice in the publication of the libel or slander."

A qualifiedly privileged communication is thus defined in 17 R. C. L., 341:

"A communication made in good faith on any subject-matter in which the person communicating has an interest or in reference to which he has a duty."

And in Cyc., 385:

Where a party makes a communication and such communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice."

"Where the evidence establishes circumstances which the law says support a duty to make a statement of facts honestly believed to be true, or an honest comment on facts, such circumstances are called an 'occasion of privilege.'" *Atwater v. News Co.,* 67 Conn., 504; 34 Atl., 865.

The rule of evidence is that, when it appears beyond question, or is conceded, that the occasion was one of qualified privilege, the burden is then cast upon the plaintiff to rebut the *prima facie* presumption that the communication was of like character.

"When the defense is pleaded that the communication upon which an action for libel or slander has been instituted was privileged, the burden of proof rests on the defendant to show that the occasion was privileged but when the occasion is shown to have been qualifiedly privileged, it is generally held that the burden of proof rests upon the plaintiff to show actual malice on the part of the defendant." 17 R. C. L., 418—citing a vast array of cases.

"The occasion of making a communication qualifiedly privileged rebuts the *prima facie* inference of malice arising from the publication of matter prejudicial to the character of plantiff, and throws upon him the onus of proving malice in fact." 25 Cyc., 376.

"The proposition that where an alleged defamatory communication is shown to have been conditional or qualifiedly privileged the burden is on the plaintiff to prove actual malice, is supported by a multitude of decisions." Note 3 L. R. A. (N. S.) 696, citing cases from the Federal Courts, Alabama, Connecticut, Delaware, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, South Dakota, Texas, Virginia, West Virginia, and Wisconsin; and South Carolina might have been added (*Smith v. Youmans,* 3 Hill, 85).

"The burden of proving a plea that the communication was privileged is on the defendant. When it is established or conceded that the communication was privileged the burden is then cast upon the plaintiff to show that the words were uttered from an improper motive, and not for

a reason that would otherwise render them privileged." *Abraham v. Baldwin,* 52 Fla., 151; 42 South., 591; 10 L. R. A. (N. S.), 1051; 10 Ann. Cas., 1148.

"When the words alleged to be slanderous are embraced in the class of privileged communications, it is shown by a great number of authorities, that the plaintiff is bound to prove the existence of malice as the real motive of the defendant's language." *Beeler v. Jackson,* 64 Md., 589, 2 Atl., 916.

The case of *Hemmens v. Nelson,* 138 N. Y., 517; 34 N. E., 342; 20 L. R. A., 440, contains an exceedingly clear statement of the rule:

"The question is not whether the charge is true or false, nor whether the defendant had sufficient cause to believe that the plaintiff sent the letter, or acted hastily, or in a mistake, but the question is, the occasion being privileged, whether there is evidence for the jury that he knew or believed it to be false. The plaintiff (defendant) may have arrived at conclusions without sufficient evidence, but the privilege protects him from liability on that ground, until the plaintiff has overcome the presumption of good faith by proof of a malicious purpose to defame her character, under cover of the privilege."

"The burden of proving that the occasion of publication was privileged is on the defendant." The occasion being privileged, the burden is then cast upon the plaintiff of showing that the words were published from an "improper motive, and not for a reason which otherwise would render them privileged." *King v. Patterson,* 49 N. J. Law, 417; 9 Atl., 705; 60 Am. Rep., 622. "But this is not true in cases involving a qualified privilge. In such cases actual malice must be proved," and the onus of proof "is upon the plaintiff." *Fahey v. Shafer,* 98 Wash., 517; 167 Pac., 1118. In *Massee v. Williams,* 207 Fed., 222; 124 C. C. A., 492, it is said:

"The occasion being privileged, the communication did not amount to actionable defamation until it appeared that it had its origin in actual malice.  * * * *  It was therefore incumbent on the plaintiff to show such malice in addition to injurious utterances, and that the defendant seized upon the occasion as a pretext or otherwise availed himself of it maliciously in fact to slander him"—citing many cases, Starkie on Slander and Libel, § 670, Townsend, 349, 350, Newell, 389.

The relative provinces of Court and jury are thus defined:

"If the testimony bearing on the question of whether or not a communication is privileged is not conflicting, the question of its character in this respect would be one of law for the Court." *Melcher v. Beeler*, 48 Colo., 233; 110 Pac., 181; 139 Am. St. Rep., 273

"The jury, however, will be the proper tribunal to determine the question of express malice, where evidence of ill will is forthcoming; but, if taken in connection with admitted facts, the words complained of are such as must have been used honestly and in good faith by the defendant, the Judge may withdraw the case from a jury and direct a verdict for the defendant." *Denver Co. v. Holloway*, 34 Colo., 432; 83 Pac., 131; 3 L. R. A. (N. S.) 696; 1142 Am. St. Rep., 171; 7 Ann. Cas., 840.

"But even though a communication be privileged, the question of good faith, belief in the truth of the statements made, and the existence of actual malice, remain for the jury to determine when, under the issues and testimony, it is in issue, and the burden of establishing the facts which would render a privileged communication actionable rests upon the plaintiff (citing cases) but the falsity of the statements of a privileged communication is not sufficient of itself to raise the inference that they were maliciously inspired."

*Melcher v Beeler,* 48 Col., 233; 110 Pac., 181; 139 Am. St. Rep., 273.

In *Locke v. Bradstreet* (C. C.) 22 Fed., 771, it is held that whether a slander is within the protection afforded to a privileged communication is a question of law; that whether it is defamatory and actuated by malice is one of fact for the jury.

In *Smith v. Youmans,* 3 Hill, 85, the Court declares:

"Where it appears, on the plaintiff's showing, or on evidence produced by the defendant, that the publication was made on such an occasion, or under such circumstances as have been specified, and that the words were spoken *bona fide* in the discharge of some legal or moral duty. rendered necessary by the exigencies of society, the occasion affords a *prima facie* presumption to rebut the inference of malice, and the plaintiff would fail without further proof."

If this does not mean that, upon the conclusion that the occasion was privileged, a matter for the Court to decide when the testimony is all one way, the burden is cast upon the plaintiff to prove that the privilege has been abused. It seems difficult to frame language sufficiently clear to convey that idea, the Court says:

"Malice is, however, the essential ingredient which entitles the plaintiff to recover; and whatever may be the occasion of the speaking, except perhaps that of being in the course of a trial in a Court of Justice by a Judge or witness, it is competent for the plaintiff to reply in evidence, and to show express malice; to prove that the words were not spoken *bona fide,* but that the occasion was used only as a pretext for venting the defendant's malice."

The Court continues:

"The circumstances themselves, the manner of speaking, the temper manifested, without extrinsic evidence, may be enough to indicate malice, and to deprive the defendant of

the benefit he might have derived from the occasion of the speaking, the question is one for the jury, whether the words spoken, if actionable, in themselves, were spoken maliciously, and with defamatory intention."

It seems clear therefore from this authority, supported as it is with practical unanimity by text-writers and decided cases, that, if malice may be inferred from the attending circumstances without extrinsic evidence, or from evidence by the plaintiff in reply, the question is one for the jury. It is equally true that, if the evidence is susceptible of only one reasonable inference, the matter becomes one for the Court's decision.

In the case at bar there was not the slightest extrinsic evidence in reply by the plaintiff, to show actual malice. Was there the slightest evidence in the attending circumstances to show it? It is submitted that there was not. No ill feeling was manifested by either Tevis or Roache against the plaintiff. They were upon legitimate business of the company; it was their right and duty to follow every lead in the investigation of the robbery. They had a perfect right, without protest on the part of Switzer, knowing of the purpose of the interview, to have him accompany them to the office. In that interview Tevis had a perfect right to interrogate him as to his movements on the night of the robbery, particularly under the circumstances which had so soon before preceded the robbery. He was seeking information and made the remark complained of in response to a flare-up by Switzer, as he himself testified, "I asked him if they thought that I had committed the crime." If Tevis had answered "Yes, I think so," Switzer would have had no cause of complaint, for the answer had been induced by him. Tevis did not go so far as that, but stated certain suspicious circumstances, and, what is extremely significant upon the issue of malice, accompanied his answer with these words:

"But I might find the people you were visiting in Lena the night before and the night the robbery took place;" plainly implying that, if Switzer's previous statement of having called upon a young lady at Lena should be verified, even the suspicion would disappear. It appears upon the cross-examination of both Tevis and Roache that they followed up the statement of Switzer and found that he had in fact visited the young lady, and nothing further was done in the effort to connect Switzer with the robbery, both being satisfied of his innocence.

In *Fahr v. Hayes,* 50 N. J. Law, 275, 13 Atl., 261, it is held that the existence of a malicious motive may be legitimately gathered from the circumstances under which the communication was made, as where an opportunity was sought to make it before third persons not legally interested in hearing it, rather than to those interested. Certainly then the studied purpose that one, who doubtless was interested, should retire, would lead to a negation of malice.

Another ground upon which the qualifiedly privileged character of the communication may be sustained, is, according to the plaintiff's own statement the remark of Tevis, alleged to be slanderous, was made in response to a question from him: "I asked them (referring to Tevis) if they thought I had committed the crime and Mr. Tevis said," etc., and there is nothing to show that the agent went beyond the plaintiff's question to maliciously defame him; the circumstances affirmatively show the contrary.

"As a general proposition, where defamatory matter is published in the form of an answer made to inquiries by plaintiff or his agent, the answer is privileged, if the answer of defendant does not go beyond the plaintiff's question." 25 Cyc., 392.

"It may be laid down as a general rule that, where defamatory matter is published in response to inquiries made by the one defamed, or his authorized agent, it is qualifiedly

privileged, if it does not go beyond the scope of the inquiries." Note 46 L. R. A. (N. S.) 104; *Billings v. Fairbanks,* 136 Mass., 177; *Palmer v. Hammerston,* Cab. & El., 36; *Laughlin v. Schnitzer* (Tex. Civ. App.) 106 S. W., 908; *Warr v. Jolly,* 6 Car. & P. 497; *Haynes v. Leland,* 29 Me., 233; *Patterson v. Frazer* (Tex. Civ. App.) 79 S. W., 1077; *Louisville Co. v. Lancaster,* 142 Ky. 122, 133 S. W., 1155; *Beeler v. Jackson,* 64 Md., 589; 2 Atl., 916; *Middleby v. Effler,* 118 Fed., 261; 55 C. C. A., 355.

In *Bank v. Bader,* 59 Minn., 329; 61 N. W., 328, the plaintiff cashier took a friend with him to see the defendant about certain reports said to have been circulated by him regarding the solvency of the bank. What was said by the defendant, thus induced by the cashier and his friend, was held privileged.

In *Billings v. Fairbanks,* 136 Mass., 177, the plaintiff had been charged with larceny by the defendants. He asked a friend to see the defendant about it, and while they were discussing the matter, the plaintiff stepped up and entered into the conversation, whereupon the defendant repeated the charge. Held that the communication was privileged.

In *Beeler v. Jackson,* 64 Md., 589; 2 Atl., 916, the plaintiff, an employee, had been discharged. Upon inquiry of the official by whom he had been discharged, he was informed that he had been discharged for stealing. He sued in slander, and it was held that the fact that he sought the information, made the language a privileged communication, unless the plaintiff could clearly show malice, abuse, or vilification in language, manner, or circumstances under which the communication was made. The Court said:

"It was very natural that the plaintiff should wish to know why he was discharged, and it was but simple justice that the defendant should truthfully and frankly tell him the reason. It was in the nature of a social duty

that he should do so. It was a proper and legitimate occasion for him to speak freely and without reserve. In order to relieve him from all embarrassment, the law shields him from any previous consequences on account of his manner, provided it is given in truth, honesty, and fairness."

In *Christopher v. Akin,* 214 Mass., 332; 101 N. E., 971; 46 L. R. A. (N. S.), 104, a statement by an employer who had been compelled to pay for property taken from a house where he was doing work, to an employee whom he had discharged because he suspected him of having taken the property, and from whose pay he had deducted its value, in response to a question as to the cause of the deduction, that it was for property which the employee had stolen on the specified job, was privileged, although made in the presence of other employees.

"But where the interview in the presence of others was either invited or consented to by the person claiming to have been defamed, the occasion is qualifiedly privileged, whether such persons be strangers or kindred." *Ecuyer v. Ins. Co.,* 101 Wash., 247; 172 Pac., 359; L. R. A. 1918E, 536.

In *Rosenbaum v. Roche,* 46 Tex. Civ. App., 237; 101 S. W., 1164, it was held that, where an employer is requested by the father of a discharged employee to state why his daughter was discharged, the reply of the employer would be privileged. In *Schultz v. Guldenstein,* 144 Mich., 636; 108 N. W., 96, the evidence showed that a report for which the defendant was responsible came to the knowledge of plaintiff and her husband; that the husband called on defendant, and, in response to a question, he stated that plaintiff was guilty of larceny. The circumstances were such as to preclude any presumption of malice. It was held that a qualified privilege attended the publication of the slanderous words, and defendant was

responsible only in case the words were false and that malice existed.

"Therefore, with some possible qualifications, if the answer of the defendant did not go beyond the plaintiff's question, * * * the suit could not be maintained." *Middleby v. Effler,* 118 Fed., 261; 55 C. C. A., 355, citing Odgm. Lib. & S. 255 (3rd Ed.)

(3)   As to the third question: The respondent appears to rely for the establishment of this element, solely upon the proximity of Wilkinson and the probability of his having heard the conversation. The parties do not agree upon the facts as to Wilkinson's location. The plaintiff first testified that Wilkinson was present; he then stated that Wilkinson "had left the room" but was standing by the open door; that the conversation was not in an unusually loud tone; that it could have been heard by any one then present. He does not state that Wilkinson could have heard it; there is no direct evidence that he did hear it; he was not a witness in the case. All sides agree that Wilkinson was requested to retire. In the absence of evidence that he did not hear or could probably have heard the conversation, and in view of the request that he retire from the room, so far as Wilkinson is concerned, there is no evidence tending to establish publication.

Although the respondent has made no other contention than that the element of publication was supplied by the proximity of Wilkinson, if the defense of qualified privilege should not be sustained, the uttering of the slander in the immediate presence and hearing of McLeod, though he was in collaboration with Tevis, we are inclined to think, supplied the element of publication. Assuming, however, that Wilkinson did hear the conversation, that fact suggests an inquiry as to its effect upon the character of the communication, if it should be otherwise established as qualifiedly privileged. *In Fahr v. Hayes,* 50 N. J. Law, 275; 13 Atl.,

261, it is held that the fact that casual bystanders, not legally interested in the communication complained of, are present and hear it, is not of itself sufficient to remove the privilege.

"The fact that the slanderous language was incidentally overheard by persons in an adjoining room was not such a publication as would remove it from the protection of the privilege." *McKenzie v. Burns Det. Agency* (Minn.) 183 N. W., 516.

See, also, to the same effect: *Gildner v. Busse,* 2 Ont. L. Rep., 561; *Sheftall v. R. Co.,* 123 Ga., 589; 51 S. E., 646; *Pillard v. Oliver,* Q. B., 474; *Broughton v. McGrew* (C. C.) 39 Fed., 672; 5 L. R. A., 406; *Padmore v. Lawrence,* 11 Ad. & E., 380.

For these reasons the motion for a directed verdict should have been granted, and the judgment of this Court should be that the judgment of the Circuit Court be reversed, and the case remanded, with instructions to direct a verdict for the defendant under Rule 27 (90 S. E. xii).