THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 James L. Myles,
 III, Appellant,
 v.
 Main-Waters
 Enterprises, LLC, Main-Waters Management, Inc. and City of Orangeburg, Defendants,
 Of Whom, Main-Waters
 Enterprises, LLC and Main-Waters Management, Inc. are the, Respondents.
 
 
 

Appeal From Orangeburg County
  Diane Schafer Goodstein, Circuit Court
Judge

Unpublished Opinion No.  2011-UP-112
 Submitted January 4, 2011  Filed March 22,
2011

AFFIRMED

 
 
 
 John W. Carrigg, Jr., of Columbia; and John E. Parker and Grahame
 E. Holmes, of Hampton, for Appellant.
 Weston Adams, III, Helen F. Hiser, M. McMullen Taylor and Charles
 O. Williams, III,  all of Columbia, for Respondents.
 
 
 

PER CURIAM: James L. Myles, III, appeals the circuit court's order
 granting summary judgment to Main-Waters Enterprises, LLC and Main-Waters
 Management, Inc. (Main-Waters).  Myles argues the circuit court erred in ruling
 (1) Myles was unable to establish a prima facie case of defamation, (2) Myles
 failed to establish a claim for false arrest, and (3) Myles failed to establish
 a claim of negligence.  We affirm[1] on all three points.    
FACTS / PROCEDURAL HISTORY
This appeal arises
 out of a physical altercation that occurred in a McDonald's restaurant parking
 lot in Orangeburg, South Carolina.  On the night of the incident, Myles left a
 local bar with his fiancée, Wendy Summers,[2] and another couple.  All four rode together in a Ford Explorer.  The
 other couple, Scott Dyches and his wife Julie Jackson, began arguing while
 riding in the Explorer.  At some point during the argument, Scott exited the
 Explorer and began walking along the side of the road.  Jackson then called
 Michael Dyches, Scott's father, to come and pick Scott up.
After Michael
 picked up his son Scott, a fight ensued between the father and son regarding
 whether Scott should continue to stay out or go home.  Michael pulled into the
 McDonald's parking lot where Myles, Jackson, and Summers were waiting in the
 drive-thru line to pick up their food.  When Scott saw his wife, he stood up in
 the seat of his father's Ford Mustang convertible and began yelling.  Michael
 "popped" Scott either on his leg or in his stomach, and the father
 and son began to physically fight.  Witnesses testified Scott was on top of
 Michael choking him, while Michael lay pinned between the bucket seats of his
 convertible.  Myles exited the Explorer and pulled Scott out of the convertible
 to break up the fight.[3]
Officer Robert Hill
 was the first to respond to the incident, and he encountered Scott running
 along Highway 301 near the McDonald's.  Officer Hill noted Scott appeared
 disheveled and intoxicated.  Scott admitted to being involved in an altercation
 with his father at McDonald's.  Officer Hill proceeded to the McDonald's and
 continued to interview Scott and Michael Dyches.[4] 
 Michael Dyches also appeared disheveled and intoxicated.  Once both father and
 son admitted to fighting outside of the McDonald's, Officer Hill arrested both
 men.
When
 asked if anyone else was involved in the fight, Scott told Officer Hill that he
 saw Myles "coming towards him" and then "his eyes went
 closed" before he was beaten about the face and head.  Officer Hill noted
 Scott did not actually see Myles hit him.  Officer Hill interviewed Myles after
 arresting the Dyches.  According to Myles, he saw the Dyches fighting and
 "went and started trying to break them up."  Officer Hill noted
 Myles's account was consistent with Michael Dyches's account, and Scott was
 unsure if Myles was actively involved in the fight or not.  Therefore, Officer
 Hill did not intend to arrest Myles based solely on Scott's account of the
 incident.  
At
 some point during the police investigation, an unidentified McDonald's employee[5] called Officer Hill over to the drive-thru window and informed him that Myles
 was also involved in the altercation.  The employee's account varied
 significantly from the other witnesses' accounts.  Specifically, the young
 woman told Officer Hill that Michael and Myles drove up in a red convertible,
 approached the Explorer where Scott was waiting in the drive-thru line, and
 pulled him out of the vehicle and began beating him.  Officer Hill testified that
 on the night of the incident no one other than the unidentified McDonald's
 employee told him Myles was actively involved in the fight.  However, Officer
 Hill explained that drive-thru workers are "some of your better witnesses
 because they see everything, especially at 3 o'clock in the morning on Saturday
 night they get cussed at more than we do."
Prior
 to speaking with the unidentified female employee, Officer Hill was prepared to
 let Myles leave the scene as long as he did not drive.[6] 
 As a result of the young woman's account, however, the police decided to arrest
 Myles for fighting, along with Scott and Michael.  Myles was initially calm as
 the police began to handcuff him.  However, Summers began screaming profanities
 at the police and became visibly agitated when the arresting officers began to
 handcuff Myles.  Upon seeing the officers forcibly detain Summers by leaning
 her over the hood of a patrol car to handcuff her, Myles became enraged.  Myles
 began yelling at the officers and physically resisting arrest, saying
 "that's a female."  One of the officers deployed his taser two times
 on Myles,[7] and the police were able to handcuff Myles and place him in the back of a
 patrol car.  
Myles subsequently brought a lawsuit against the
 entities that own and operate the McDonald's restaurant where this incident
 occurred, namely, Main-Waters Enterprises, LLC, Main-Waters Management, Inc.,
 and Main-Waters Enterprises Partnership, LLP.[8]  Myles also sued the City of Orangeburg and the three Orangeburg Public Safety
 Department officers who responded to the incident.[9] 
 Myles alleged slander, false arrest and imprisonment, and negligence against
 all parties.  Myles claimed damage to his reputation as a result of the false
 statement by a Main-Waters employee concerning Myles's involvement in the fight
 between Michael and Scott Dyches, which resulted in Myles's allegedly unfounded
 arrest by the City of Orangeburg.  Myles also claimed he suffered a serious and
 permanent injury as a result of being tased, forcing him to retire and incur
 $1,069,854 as a result of his loss of earning capacity.
During
 discovery, witness deposition testimony diverged regarding what happened after
 Myles pulled Scott from the convertible.  Michael Dyches, Scott Dyches, Julie
 Jackson (Scott's wife), Wendy Summers, and Myles all testified Myles's only
 involvement in the altercation was pulling Scott out of the convertible and
 away from Michael.  Letonya Jones, the McDonald's shift manager, testified she
 saw all three men fighting, and she recalled seeing Myles punch at least one of
 the other two men.  Asheria Shuler, another McDonald's employee, also testified
 all three men were fighting and noted either Scott or Michael punched Myles as
 he tried to break up the fight.
Following
 the completion of discovery, Main-Waters moved for summary judgment.  After a
 hearing, the circuit court granted Main-Waters' motion for summary judgment on
 all three claims.  Myles subsequently filed a timely motion to alter or amend,
 which the circuit court summarily denied.  This appeal followed.  
STANDARD OF REVIEW
This
 court reviews the grant of a summary judgment motion under the same standard
 applied by the circuit court under Rule 56(c), SCRCP.  Jackson v.
 Bermuda Sands, Inc., 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App.
 2009).  Rule 56(c), SCRCP, provides summary judgment shall be granted
 where "the pleadings, depositions, answers to interrogatories, and
 admissions on file, together with the affidavits, if any, show that there is no
 genuine issue as to any material fact and that the moving party is entitled to
 a judgment as a matter of law."  
In
 ascertaining whether any triable issue of fact exists, the evidence and all
 inferences that can be reasonably drawn from the evidence must be viewed in the
 light most favorable to the non-moving party.  Belton v. Cincinnati
 Ins. Co., 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004).  "[I]n cases
 applying the preponderance of the evidence burden of proof, the non-moving
 party is only required to submit a mere scintilla of evidence in order to
 withstand a motion for summary judgment."  Hancock v. Mid-South Mgmt.
 Co., 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).
ISSUES ON APPEAL
1. Did the circuit court err in
 ruling Myles failed to establish a prima facie case of defamation?
2. Did the circuit court err in
 ruling Myles failed to establish a claim of false arrest?
3. Did the circuit court err in
 ruling Myles failed to establish a claim of negligence?
LAW / ANALYSIS
I. Defamation
Myles
 argues the circuit court erred in finding the Main-Waters employee's statements
 were "substantially true."  We disagree.  The
 truth of the matter published is a complete defense to an action based on
 defamation.  Ross v. Columbia Newspapers, Inc., 266 S.C. 75, 80,
 221 S.E.2d 770, 772 (1976).  A sufficient
 defense is made out where the evidence establishes that the statement was
 substantially true.  Id.  "It is not necessary to establish
 the literal truth of the precise statement made."  Restatement (Second) of
 Torts § 581A (1977).  "Slight inaccuracies of expression are immaterial
 provided that the defamatory charge is true in substance."  Id.
Myles
 contends the employee's statement was false because he was not actually
 fighting but merely intervened in a fight between Scott and Michael Dyches to
 stop the fight.  However, during his deposition testimony, Myles
 admitted that he "just basically drag  drug [Scott] out the car."  In
 addition, while riding in the patrol car after his arrest, Myles told one of
 the arresting officers: "I grabbed [Scott], I grabbed him and threw him
 out of the car."
The circuit court
 did not err in finding the employee's comment was substantially true.  Even
 viewing the facts in the light most favorable to the non-movant, Myles admitted
 to grabbing and throwing Scott out of a vehicle, which a casual observer could
 reasonably view as engaging in a fight.  See Restatement (Second) of
 Torts § 581A (1977) ("It is not necessary to establish the literal truth
 of the precise statement made.").
Next,
 Myles argues the circuit court erred in ruling that the Main-Waters employee's
 statements were qualifiedly privileged as statements made in the investigation
 of a crime for the purpose of prosecuting criminals.  We disagree.  
"In
 a defamation action, the defendant may assert the affirmative defense of
 conditional or qualified privilege."  Swinton Creek Nursery v. Edisto
 Farm Credit, ACA, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999). 
 "Under this defense, one who publishes defamatory matter concerning another
 is not liable for the publication if (1) the matter is published upon an
 occasion that makes it conditionally privileged, and (2) the privilege is not
 abused."  Id.  
It
 is the duty of the court to determine if the statement is privileged as a matter
 of law.  Murray v. Thornton, 344 S.C. 129, 140, 542 S.E.2d 743, 749 (Ct.
 App. 2001).  Communications made in the investigation of a crime for the
 purpose of detecting the participants in the crime are privileged.  Bell v.
 Bank of Abbeville, 208 S.C. 490, 494, 38 S.E.2d 641, 643 (1946); Switzer
 v. Am. Ry. Express Co., 119 S.C. 237, 241, 112 S.E.110, 111 (1922).  
"Where
 the occasion gives rise to a qualified privilege, there is a prima facie
 presumption to rebut the inference of malice, and the burden is on the
 plaintiff to show actual malice or that the scope of the privilege has been
 exceeded."  Swinton Creek Nursery, 334 S.C. at 484-85, 514 S.E.2d
 at 134.  While abuse of the conditional privilege is ordinarily an issue of
 fact reserved for the jury, in the absence of a controversy as to the facts, it
 is for the court to say whether or not the privilege has been abused or
 exceeded.
 Woodward v. S.C. Farm Bureau Ins. Co., 277 S.C. 29, 32-33, 282 S.E.2d
 599, 601 (1981) (internal citations omitted).  
Abuse
 of a conditional privilege may be shown by communication that exceeds what the
 occasion demands.  Davis v. Niederhof, 246 S.C. 192, 199-200, 143 S.E.2d
 367, 371 (1965).  In addition, the privilege may also be overcome by a
 showing of common law malice on the part of the alleged defamer.  Murray v.
 Holnam, Inc., 344 S.C. 129, 142, 542 S.E.2d 743, 750 (Ct. App. 2001). 
 "Common law actual malice means the defendant acted with ill will toward
 the plaintiff or acted recklessly or wantonly, meaning with conscious
 indifference toward the plaintiff's rights."  Id.  
Here,
 Main-Waters established the privilege by showing that its employee reported
 what she saw in the McDonald's parking lot on the night of the incident to an
 officer of the Orangeburg Department of Public Safety during the course of his
 investigation of a crime.  Therefore, the burden shifted to Myles to
 demonstrate the employee lacked good faith, or that the statement was made
 maliciously.  See Swinton Creek Nursery, 334 S.C. at 484-85, 514
 S.E.2d at 134.
We
 do not believe Myles demonstrated any evidence of lack of good faith or malice
 on the part of the unidentified Main-Waters employee.  Two other McDonald's
 workers testified they saw all three men fighting.  In addition, there was no
 evidence that the employee published her statement to anyone other than Officer
 Hill.  Myles did not present any evidence to indicate the employee exceeded the
 scope of the privilege.  Based on these facts, the circuit court did not err in
 finding the employee's statement was privileged.  Therefore, no genuine issue
 of material fact was in dispute with respect to the qualified privilege, and
 summary judgment was appropriate.  
 Summary judgment
 was appropriate because the employee's statement was made subject to a
 qualified privilege, and the scope of that privilege was not abused.  In
 addition, the statement was substantially true.  Therefore, no cause of action
 for defamation can lie and we need not address the remaining arguments Myles
 raises on appeal with respect to his defamation cause of action.  Futch v.
 McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591,
 598 (1999) (noting an appellate court need not address remaining issues
 when the resolution of a prior issue is dispositive).  
II. False Arrest / Imprisonment
Myles
 contends he presented sufficient evidence to establish a cause of action for
 false arrest or false imprisonment.  We disagree.  
To
 prevail on a claim for false imprisonment, a plaintiff must prove that the
 defendant intentionally and unlawfully restrained the plaintiff.  Jones v. Winn-Dixie
 Greenville, Inc., 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App. 1995). 
 "The charge of false imprisonment is not confined to the party who
 unlawfully seizes or restrains another, but it likewise extends to any person
 who may cause, instigate or procure an unlawful arrest."  Wingate v.
 Postal Tel. & Cable Co., 204 S.C. 520, 528, 30 S.E.2d 307,
 311 (1944).  "[W]here a private person induces an officer by request,
 direction or command to unlawfully arrest another, he is liable for false
 imprisonment."  Id.  
However,
 "[w]here a person merely directs the attention of a police
 officer to what he supposes to be a [crime] . . . and the officer, without
 other direction, arrests the offender on his own responsibility, the person who
 did nothing more than communicate the facts to the officer is not liable for
 causing the arrest . . . ."  Id. at 527-28, 30 S.E.2d at 310-11.  In
 addition, when a person is properly arrested by lawful authority, an action for
 false arrest and imprisonment cannot be maintained.  Prosser v. Parsons,
 245 S.C. 493, 501, 141 S.E.2d 342, 346 (1965).
An
 officer can make an arrest for a misdemeanor not committed in his presence
 "when the facts and circumstances observed by the officer give him
 probable cause to believe that a crime has been freshly committed."  State
 v. Martin, 275 S.C. 141, 146, 268 S.E.2d 105, 107 (1980).  Probable cause
 is a good faith belief that a person is guilty of a crime when the belief rests
 on such grounds as would induce an ordinary, prudent, and cautious person under
 the circumstances to believe likewise.  Gathers v. Harris Teeter
 Supermarket, Inc., 282 S.C. 220, 228, 317 S.E.2d 748, 754 (Ct. App. 1984). 
 While the existence of probable cause is generally a question of fact for a
 jury, the issue may be decided as a matter of law when the evidence yields but
 one conclusion.  Parrott v. Plowden Motor Co., 246 S.C. 318, 323, 143
 S.E.2d 607, 609 (1965).
Because the arrest was lawful, Myles cannot establish a cause of
 action for false arrest or imprisonment.  See Prosser, 245 S.C.
 at 501, 141 S.E.2d at 346.  Specifically, Myles admitted to Officer Hill that
 when the Dyches started fighting he "went and started trying to break them
 up."  Scott told Officer Hill he could not be certain whether Myles hit
 him, but that he saw Myles approaching him before he was hit in the face and
 his eyes went black.  Scott had red marks on his chest and face when police
 arrived, and his shirt was torn.  The physical evidence of a fight, in addition
 to Scott's statement, Myles's own admission, and the unidentified Main-Waters
 employee's comment that Myles was actively involved in the fight, combined to
 give Officer Hill probable cause to arrest Myles.  
Because
 the arresting officer had probable cause to arrest Myles, Main-Waters, as a
 matter of law, is not liable for false arrest.  
III. Negligence
Myles
 argues the unidentified Main-Waters employee breached her duty of care by
 making allegedly false statements to the police, thereby causing Myles to injure
 his back when he was tased by the police.  Myles further contends the issue of
 proximate cause is a disputed factual issue to be determined by a jury.  We
 disagree.  
"To establish
 a cause of action for negligence a plaintiff must show . . . three essential
 elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach
 of that duty by negligent act or omission; and (3) damage proximately resulting
 from the breach of duty."  Trotter v. State Farm Mut. Auto. Ins. Co.,
 297 S.C. 465, 474, 377 S.E.2d 343, 348 (Ct. App. 1988).  When an
 intervening agency interrupts the foreseeable chain of events, the defendant's
 acts are not the proximate cause.  Mellen v. Lane, 377 S.C. 261, 281,
 659 S.E.2d 236, 246-47 (Ct. App. 2008).  Furthermore, when the evidence is
 susceptible to only one inference, proximate cause may be decided as a matter
 of law.  Vinson v. Hartley, 324 S.C. 389, 402, 477 S.E.2d 715, 721-22
 (Ct. App. 1996).  
The
 circuit court correctly held that the superseding and intervening acts of
 Myles, his fiancée, and the police served to break any causal chain connecting
 the allegedly defamatory statement of the Main-Waters employee and any
 resulting damages.  See Mellen, 377 S.C. at 281, 659 S.E.2d at
 246-47.  Myles initially calmly consented to being arrested and only became
 enraged after seeing the police detain his fiancée.  Once Myles began to
 physically resist arrest and verbally abuse the police, the police deployed a
 taser to incapacitate him.  Therefore, Myles's physical injuries did not
 proximately result from the employee's comment, but instead from Myles's own actions
 and those of his fiancée incidental to Myles being arrested.  Furthermore,
 Myles provided no evidence that any of the Main-Waters employees deviated from
 their training in reporting the fight to the police.
Accordingly,
 we affirm the circuit court's grant of summary judgment to Main-Waters on the
 negligence cause of action.
CONCLUSION
We
 affirm the grant of summary judgment to Main-Waters on Myles's defamation, false
 arrest / imprisonment, and negligence causes of action.
 THOMAS,
 PIEPER, and GEATHERS, JJ., concur.  

[1] We decide this
 case without oral argument pursuant to Rule 215, SCACR.
[2] Wendy Summers and James Myles were married after
 these events, and Summers is now Wendy Myles.  We will refer to her as Summers
 throughout this opinion for clarity and ease of reference.
[3] While riding in the patrol car after his arrest,
 Myles told one of the arresting officers: "I grabbed [Scott], I grabbed
 him and threw him out of the car."  Myles also admitted during his
 deposition testimony that he "just basically drag  drug [Scott] out the
 car."  
[4] Presumably, Officer Hill transported Scott back to
 the McDonald's in the backseat of his patrol car.  However, the record is
 unclear on this point.  
[5] During the summary judgment hearing, Main-Waters'
 counsel noted a young woman named Constance Sweeper was probably the employee
 police spoke to on the evening of the incident who indicated Scott was pulled
 out of the Explorer by Michael and Myles.  However, the police were unable to
 obtain a statement from Sweeper, and neither party was able to locate her in
 order to take her deposition.  
[6] Officer Hill testified both Summers and Myles
 appeared to be intoxicated on the night of the incident.
[7] Myles allegedly said "it feels good" after
 being tased the first time, thereby inducing the officer to deploy his taser a
 second time in order to incapacitate Myles.  
[8] The parties agreed to dismiss Main-Waters Enterprises
 Partnership, LLP, by stipulation of dismissal with prejudice on March 8, 2007,
 as it was a nonexistent entity.
[9] A May 14, 2007 circuit court order dismissed the
 individually named officers as parties to this action based on the fact that
 the officers were acting within the scope of their employment and based on the
 fact that there was no allegation of fraud, malice, intent to harm, or a crime
 of moral turpitude.