### 21930

Miriam L. DEW, Respondent-Appellant, v.
The CITY OF FLORENCE, Appellant-Respondent.
(303 S. E. (2d) 664)

*James R. Bell,* Florence, *for appellant-respondent.*

*Richard G. Dusenbury,* Florence, *for respondent-appellant.*

May 25, 1983.

LITTLEJOHN, Justice:

This is an appeal from a declaratory judgment action brought under the provisions of § 15-53-10 of the *Code of Laws of South Carolina* (1976), as amended. Plaintiff-Respondent, Miriam L. Dew (Dew) alleged that her employment had been wrongfully terminated by the Florence City Manager, Thomas W. Edwards (City Manager). The trial court, sitting without a jury, ruled in favor of Dew. The City appeals; we reverse.

Dew began work with the City in January of 1975. She was promoted to administrative assistant to the City Manager in July of 1977. The current City Manager was appointed a few months later.

Dew's duties as administrative assistant to the City Manager initially included the dual function of personnel director and administrative assistant. In January of 1978, the City hired a personnel manager, leaving Dew as administrative assistant only. The newly appointed personnel manager later assumed the title of Personnel Director and began reporting directly to the City Manager rather than to Dew. It was at this point that communications between Dew and the City Manager began to break down.

On May 26, 1978, a new pay plan was adopted by the City. In accordance with this plan Dew, who anticipated a salary increase, found her position reduced from a "Grade 16" to a "Grade 13". Her salary remained the same. The position of

Personnel Director was elevated from a "Grade 16" to a "Grade 17" with a thirty-five percent (35%) salary increase. According to Dew's testimony, she was so "frustrated" and "demoralized" by what she considered to be a demotion that she had to leave work early that day.

The following Monday, both the City Manager and Dew expressed their doubts as to whether she could continue as his assistant. Subsequent events lead the City Manager to prepare a letter of "severe warning" on May 31 to Dew indicating that her actions over the last several days would not be tolerated and if she persisted upon her present course she would be terminated. After some discussion of the letter, the City Manager apologized and destroyed the warning letter and its carbon copy believing the problem had been resolved.

Between May 31, and July 18, 1978, at least two high-level city employees informed the City Manager that they had overheard Dew making comments critical of the new pay plan and of the City Manager in public areas in the presence of other employees. Also, during this time a newspaper reporter for the Florence EXAMINER approached the City Manager with "pencil and paper in hand" seeking a story about the new pay plan. She stated she had heard it was unfair to employees. At the meeting between the City Manager and the reporter, the reporter disclosed that the source of her information about the new pay plan was Dew.

On July 18, 1978, the City Manager called Dew to his office to discuss "some concerns he had." At this meeting, the City Manager informed her that he had heard that she was publicly criticizing the pay plan and emphasized that her comments could have an adverse impact on its success. The City Manager related to Dew his feeling that the confidential relationship between them was eroding so that he could no longer confide in her. He told her that this was the last time he would tolerate her undermining of the City Manager's office and misrepresentation of fact about the new plan. Dew claimed, as she did throughout the trial, that she had not discussed the pay plan with anyone other than close personal friends.

She asked the City Manager if she was terminated, to which the City Manager replied, "No but that she would be" if she continued as she had been. As with the other meetings be-

tween the two, no written summaries of their discussion was made or retained.

Approximately one week later, Dew and the same reporter had lunch together. At the time, the reporter was between jobs, starting in a week at another newspaper, the Florence *Morning News*, where she hoped to report city and county news as she had at the *Examiner*, for which she previously worked. Although there is some conflict in the record as to what comments were made during lunch, the reporter stated to the City Manager, "out of her concern for the City," that Dew criticized the City organization and had made statements that the City Manager was "unsuitable" for his position and had been unfair to her. That night, on July 25, 1978, the City Manager decided to terminate the employment relationship.

On July 26, 1978, the City Manager informed Dew of his decision to discharge her and offered her the opportunity to resign.

She refused.

On July 28, 1978, Dew was terminated and given the following letter of termination:

> Dear Miss Dew:
> Effective immediately you are hereby dismissed from the employment of the City of Florence. The dismissal follows your lack of effort to use proper discretion as an employee of the City Manager's Office, lack of support of and cooperation with the City Manager, insubordination, misrepresentation of facts concerning decisions of the City Manager, defiance of repeated warnings from the City Manager that your actions are unacceptable. These items were discussed with you on May 29, 1978, in an attempt to resolve this situation and again discussed with you on May 30, 1978, and May 31, 1978. Subsequently a review of the matter was conducted with you on July 18, 1978. Since July 18, 1978, I have carefully deliberated the matter and regretfully reached a decision of your dismissal since repeated attempts to gain your cooperation have failed and your defiance has continued.

Dew, in the court action before us, alleged that she should recover damages in the form of lost wages on two theories:

1. The procedures by which she was terminated did not afford her procedural due process; and

2. The procedures affecting her discharge did not comply with termination rules and regulations promulgated by the City.

By her first contention, Dew asserts the City denied her procedural due process by failing to afford her adequate notice of the charges against her or a hearing comporting with the minimum requirements guaranteed by the Fourteenth Amendment to the United States' Constitution.

Section 8-17-110 *et seq.* of the *Code of Laws of South Carolina* (1976), as amended, establishes guidelines for employee grievance procedures for counties and municipalities which elect to utilize such procedures. The act is designed to establish uniform procedures for the resolution of grievances of employees arising out of their employment. Pursuant to these code sections, the City of Florence promulgated rules and published a "City of Florence Employee Handbook." The handbook provides for the appointment of a Grievance Committee to hear complaints of employees who allege wrongful termination.

Dew appealed her termination to this committee. By a vote of five to four, it recommended that she be reinstated. The committee's action is not final and the City Manager is designated as the reviewing authority under both the statute and the handbook. As reviewing authority, he overruled the Grievance Committee. In so doing, he exercised an authority given to him by § 5-13-90 of the state law, which reads as follows:

Responsibilities of manager.

The manager shall be the chief executive officer and head of the administrative branch of the municipal government. He shall be responsible to the municipal council for the proper administration of all affairs of the municipality and to that end, subject to the provisions of this chapter, *he shall:*

(1) *Appoint and, when necessary for the good of the municipality, remove any appointive officer or employee of the municipality* and fix the salaries of such officers and employees, except as otherwise provided in this chap-

ter or prohibited by law and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office; (Emphasis added.)

The damages awarded Dew were to compensate for lost wages for the City's failure to comply with its termination procedures as established in its handbook. The decision was based on: (1) The City Manager's failure to strictly comply with the "Warnings" provision of the handbook; (2) A finding that Dew received inadequate notice of the specific charges against her; and (3) A finding that Dew was denied the right to appear while testimony was presented against her and the right to cross-examine the witnesses.

Her contention would have substantial appeal except for the fact that she was victorious before the committee as is shown by its decision in her favor. Her position is analogous to that of an accused person who is found not guilty but who, nevertheless, appeals, alleging the trial wasn't fair. While the committee might have given her a greater majority of the votes, it could not have given her a more favorable result. In view of the several conferences referred to above and the termination letter, it can hardly be argued that she was unaware of the true cause of her dismissal.

In addition to the authority given to the City Manager under the Code section quoted above, the handbook itself provides as follows:

The Grievance Committee, after having heard the testimony and after having evaluated all the facts at hand, shall vote to recommend whatever corrective measures are deemed advisable.

The Committee shall, within twenty days after hearing an appeal, make its findings and decision and report such findings and decision to the City Manager.

If the City Manager approves, the decision of the Grievance Committee shall be final, and copies of the decision shall be transmitted by the Committee to the employee, to the City Manager and to the particular Division Manager involved. *If however, the City Manager rejects the decision of the Committee, he shall make his own decision and that decision shall be final,* with copies transmitted to

the employee and the employing agency. (Emphasis added).

It is obvious that the ultimate authority to discharge, as indicated in the handbook, and specifically delegated in the statute, is in the City Manager. Under the facts and circumstances of this case, failure of the City Manager to technically comply with the handbook regulation is not an irregularity effecting the ultimate result. The relationship between the City Manager and his administrative assistant is necessarily a close one requiring the ultimate in confidence. From a review of the whole of the record, it is obvious that the discharge was as referred to in the statute "... necessary for the good of the municipality, ..."

Having disposed of the City's appeal, we now reach the appeal of Dew, whereby she argues as additional sustaining grounds that the trial court erred in finding that she had no "property" interest in her continued employment with the City. This contention is without merit.

Both the constitution of the United States and of South Carolina require notice and a hearing comporting with due process if Dew could show that she had a "property" interest in continued employment. *See, e.g. Board of Regents v. Roth,* 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. (2d) 548 (1972); and *Perry v. Sindermann,* 408 U. S. 593, 92 S. Ct. 2694, 33 L. Ed. (2d) 570 (1972).

Where a "property" interest is alleged to have been created, the sufficiency of the claim of entitlement is determined by reference to state law. *Bishop v. Wood,* 426 U. S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. (2d) 684 (1976).

Section 4.7 of the City of Florence Employee Handbook entitled "Job Tenure Not Established" states, "Nothing in this title shall be deemed to confer any vested right in employment upon any City employee."

Section 9.4 of the Handbook, entitled "Dismissal" states in part, "Any employee may be dismissed or suspended by ... the City Manager."

South Carolina Code § 5-13-90, quoted above, allows the City Manager in a council-manager form of government to dismiss any City employee "for the good of the municipality".

Nothing in the record indicates Dew was under contract with the City. In light of unambiguous language of the Em-

ployee Handbook and § 5-13-90, it is clear that Dew was an "at will" employee with no vested "property" interest in continued employment with the City.

*Cf., Rhodes v. Smith,* 273 S. C. 13, 254 S. E. (2d) 49 (1979); *Bane v. City of Columbia,* 480 F. Supp. 34 (D.S.C.1979); and *Bunting v. City of Columbia,* 639 F. (2d) 1090 (4th Cir. 1981).

Reversed.

Lewis, C. J., and Ness, Gregory and Harwell, JJ., concur.