## 22694

Paul D. EUBANKS, Cleo Casey, as Administratrix of the Estate of Donald Casey, and Gary Wiggins, Respondents v. Carey F. SMITH, individually and as City Manager for the City of Myrtle Beach, Appellant.

(354 S. E. (2d) 898)

Supreme Court

*Julian H. Gignilliat, Stephen T. Savitz* and *Linda Pearce Edwards,* Columbia, *for appellant.*

*Howell V. Bellamy, Jr.,* and *Henrietta U. Golding,* Myrtle Beach, *for respondents.*

Heard Jan. 21, 1987.

Decided April 6, 1987.

GREGORY, Justice:

Respondents commenced these actions seeking damages for alleged violations of their procedural due process rights and for libel. We reverse in part and affirm in part.

Respondents are former employees of the City of Myrtle Beach. Respondent Wiggins served as Director of the Building Department. Respondents Eubanks and Casey were employed respectively as electrical inspector and plumbing inspector for the Building Department. In November 1982, Casey reported to Wiggins that he suspected certain plumbers had received trade cards from the Department without being qualified. Upon investigation, Wiggins discovered that the Department's secretary had altered the test scores of twenty-eight electrician and plumber applicants who then received trade cards based on these false scores.

After he was unable to obtain an explanation from the secretary, Wiggins reported the matter to appellant Smith who was then City Manager for the City of Myrtle Beach. Smith commenced an administrative investigation. The State Law Enforcement Division (SLED) conducted an independent investigation at Smith's request. Smith suspended Wiggins, Casey, and Eubanks with pay in order to facilitate these investigations of the Department. The secretary was suspended and ultimately terminated. Although some unaccounted for cash funds were discovered in the Department, the investigations uncovered no criminal wrongdoing or pro-

cedural violations by respondents.

During the course of these investigations, Smith issued several press releases implying that respondents were guilty of some criminal conduct and that disciplinary action would be taken. Upon completing his investigation in January 1983, Smith offered respondents the alternative of resigning or being terminated. Wiggins resigned with severance pay; Casey and Eubanks were terminated.

Casey and Eubanks requested and received an employee grievance hearing. *See* S. C. Code Ann. § 8-17-120 (1986). Wiggins's request was refused because he had resigned. All three respondents appeared at a hearing before the State Ethics Commission in May 1983 to refute charges of using a public office for personal gain. *See* S. C. Code Ann. § 8-13-10 (1986). All charges were dismissed. When Smith refused to rehire respondents, they brought these actions to recover damages pursuant to 42 U. S. C. § 1983 (1970) and for libel. Respondents won jury verdicts totaling in excess of $517,000.[1]

### Section 1983 Actions

Title 42 U. S. C. § 1983 (1970) allows a civil action for damages against a government official who deprives an individual of a constitutionally protected right. The asserted right in this case derives from the Fourteenth Amendment which protects against governmental deprivation of a person's liberty or property without procedural due process. *See Board of Regents v. Roth,* 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. (2d) 548 (1972); *Beckham v. Harris,* 756 F. (2d) 1032 (4th Cir. 1985); *Bunting v. City of Columbia,* 639 F. (2d) 1090 (4th Cir. 1981). Respondents commenced these § 1983 actions claiming they were deprived of a liberty interest without due process. They concede that as employees at will they had no protected property interest in their employment.

> "Where a person's good name, reputation, honor, or ■ integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard

---

[1] Respondents Wiggins and Eubanks were awarded $75,000 each in the libel actions; respondent Casey died before the trial of this case and his libel action was dismissed. The awards in the § 1983 actions were respectively $132,000, $120,000, and $115,000 in actual and punitive damages.

are essential." *Board of Regents v. Roth, supra* (quoting *Wisconsin v. Constantineau,* 400 U. S. 433, 91 S. Ct. 507, 27 L. Ed. (2d) 515 (1971) ). A protected liberty interest is implicated when a public employer, in terminating an employee, makes charges against him that damage his standing in the community or otherwise imposes a stigma on the employee that forecloses other employment opportunities. *Board of Regents v. Roth, supra; Beckham v. Harris, supra; Bunting v. City of Columbia, supra.* When an employee's liberty interest is implicated, due process requires that the aggrieved employee be given notice of the charges and a hearing to afford him an opportunity to clear his name. *Board of Regents v. Roth, supra; Beckham v. Harris, supra; Patterson v. Ramsey,* 552 F. (2d) 117 (4th Cir. 1977). The employee's protected liberty interest is not the right to remain employed but is merely the right to clear his name. *Boston v. Webb,* 783 F. (2d) 1163 (4th Cir. 1986).

Respondents presented evidence their reputations ■ and employment opportunities were injured as a result of the City Manager's press releases implicating them in criminal wrongdoing. We hold respondents did establish impairment of a protected liberty interest.

Next, Smith contends respondents failed to establish their right to procedural due process was violated. We agree.

Eubanks and Casey, who did receive an employee grievance hearing, alleged the hearing was inadequate to satisfy due process because they were not afforded notice of the charges against them and were not allowed cross-examination of witnesses. Wiggins contended his due process rights were violated when he was denied a grievance hearing after he resigned.

Eubanks received notice sufficient to allow him to ■■ prevail at the grievance hearing where he was cleared of wrongdoing and was recommended for reinstatement. The notice of the charges therefore satisfied due process requirements. *Dew v. City of Florence,* 279 S. C. 155, 303 S. E. (2d) 664 (1983). Casey introduced evidence that he received the same notice as Eubanks although he did not prevail at the grievance hearing. In addition, respondents concede they received formal notice of the charges before the State Ethics Commission hearing. This hearing clearly

satisfied the due process requirement of a name-clearing hearing.

The right to cross-examination which respondents allege was violated is not an absolute requirement of due process when deprivation of a liberty interest is at stake. *Boston v. Webb, supra.* Cross-examination is only required if it is essential to avoid the risk of an incorrect decision. *Id.* Moreover, respondents concede they were afforded cross-examination at the State Ethics Commission hearing where all respondents were cleared of the charges.

Wiggins was not entitled to any due process hearing because he resigned as an alternative to being terminated. *Bury v. McIntosh,* 540 F. (2d) 835 (5th Cir. 1976). In any event, he did receive a name-clearing hearing before the State Ethics Commission which would have satisfied due process requirements.

We hold that as a matter of law respondents received the required due process regarding deprivation of their asserted liberty interest. The trial judge erred in submitting respondents' § 1983 actions to the jury.

### Libel

We next consider Smith's exceptions regarding respondents' libel actions. Smith contends that as a matter of law respondents failed to establish libel because the statements were not defamatory and Smith had a privilege to make them.

Smith issued several press releases during the course of the investigations of the Building Department. Despite the fact that Casey and Wiggins were instrumental in bringing the matter to Smith's attention, Smith never publicly acknowledged their cooperation. Instead he referred to respondents' suspensions in the context of his own continuing investigation to "determine if additional disciplinary action is warranted." Smith also indicated that "the City inquiry had broadened when other procedure violations were discovered" when in fact no violations were discovered. Smith insinuated that respondents were involved in "criminal wrongdoing" and "violations of the law" although he knew this was not true.

Smith claims his statements to the press were sub-

■ ■ stantially true and therefore could not be defamatory. Defamation need not be accomplished in a direct manner. *Tyler v. Macks Stores*, 275 S. C. 456, 272 S. E. (2d) (1980). A mere insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain. *Id.* The press releases insinuated that respondents were guilty of wrongdoing. This was false. Smith's knowing misrepresentations to the press indicate maliciousness. We hold the evidence was sufficient to submit the case to the jury on the issue of defamation.

Smith finally asserts that he had an absolute or a ■ qualified privilege as an executive official to make the alleged defamatory statements. We decline to hold that Smith was entitled to an absolute privilege on the facts before us. *Cf. Richardson v. McGill*, 273 S. C. 142, 255 S. E. (2d) 341 (1979). A qualified privilege, even if it does apply, does not prevent liability for defamation where the statement is made with actual malice. *Id.; Bell v. Bank of Abbeville*, 208 S. C. 490, 38 S. E. (2d) 641 (1947). Actual malice is ill will, recklessness, wantonness, or conscious indifference to the plaintiff's rights. *Padgett v. Sun News*, 278 S. C. 26, 292 S. E. (2d) 30 (1982). Respondents presented sufficient evidence of actual malice to submit the case for libel to the jury even if Smith was protected by a qualified privilege.

Smith's remaining exceptions are without merit and are disposed of pursuant to Supreme Court Rule 23. The judgment of the Circuit Court is reversed as to the § 1983 actions and affirmed as to the libel actions. Costs shall not be taxed against any party to this appeal.

Reversed in part; affirmed in part.

NESS, C. J., and FINNEY, J., and LAWRENCE E. RICHTER, JR., Acting J., concur.

CHANDLER, J., not participating.