542 S.E.2d 743

**John MURRAY, Appellant,**

**v.**

**HOLNAM, INC. and Thomas Thornton, Defendants,**

**of whom Holnam, Inc. is Respondent.**

**No. 3283.**

Court of Appeals of South Carolina.

Heard Dec. 13, 2000.

Decided Jan. 8, 2001.

132

Coming B. Gibbs, Jr., of Gibbs & Holmes, of Charleston, for Appellant.

J. Michelle Childs and Susan P. McWilliams, both of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for Respondent.

ANDERSON, Judge:

John Murray appeals from an order of the Circuit Court granting summary judgment to his former employer, Holnam,

Inc., as to Murray's slander cause of action. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Holnam operates a cement plant near Holly Hill, South Carolina. The plant includes a quarry which houses a large diesel fuel storage tank. Holnam hired Murray in 1989 as a control room operator. Murray's responsibilities involved operating cement-mixing machinery. Michael Smoak supervised Murray's shift. When Smoak was absent, Murray acted as the relief supervisor.

While working as relief supervisor one evening in June, 1996, Murray noticed that Chris Barnes, a coworker, was absent for approximately six hours. Murray confronted Barnes, who denied the absenteeism. Murray and Barnes argued. Murray threatened to report Barnes to Smoak. Barnes accused Murray of stealing diesel fuel by loading it into a fuel tank on the back of his truck. Murray declared he notified Smoak of the incident and of Barnes' allegation. Murray told Derome Wilson, a coworker, of Barnes' accusation, and of Murray's report to Smoak. Murray claims Smoak told him not to worry about the incident or Barnes' allegation.

Shortly after the occurrence, Barnes called Jim Bacot, a Holnam purchasing agent, and alleged he saw Murray steal diesel fuel on at least two occasions. According to Barnes, he and a coworker, Terry Jenkins, watched Murray fill his tanks with diesel fuel on the nights of March 15, 1996, and May 21, 1996. Barnes maintained they viewed the incidents from the top of an elevator about 100 yards from the storage tank. He averred that on May 21, 1996, he and Jenkins checked the gauge of the diesel tank and concluded Murray took 371 gallons. When asked whether he would have "told anybody about the diesel fuel" if Murray had not informed Smoak that he had been absent from work for six hours, Barnes responded: "I can't say."

At his deposition, Terry Jenkins denied observing Murray steal fuel or antifreeze. Further, as to the alleged May 21, 1996, incident, Jenkins acknowledged he did not check the gauge of the diesel tank prior to Murray entering the quarry. Jenkins stated one time he was on top of a crane when he saw

Murray in the quarry, but he could not see Murray's actions because it was dark. However, in a statement prepared by the human resources manager, Jenkins stated he observed Murray steal fuel and antifreeze. Jenkins, Barnes' high school acquaintance, admitted Barnes told him he was going to report Murray for stealing in response to Murray reporting Barnes absent from work.

Bacot reported the allegations to his supervisor and to Robbie Mims, production superintendent. At the time, Bonnie Connelly was the human resources manager and William Patterson was the plant manager. Mims and Smoak decided to "keep a watch on" Murray. Smoak believed Murray arrived at work the evening of June 8, 1996, with an empty tank on his truck. Mims thought Murray left the following morning with the tank full. Mims admitted he did not see Murray take any fuel. Patterson and Connelly explained to Mims that they could not proceed with action against Murray based solely on Barnes' allegations and Mims' and Smoak's suppositions.

Approximately one year later, in May of 1997, Barnes contacted Bacot and stated: "We've got a new administration and maybe we ought to give it another try." Bacot was unaware of the altercation between Murray and Barnes. Barnes alleged four additional incidents of Murray stealing fuel, oil, and antifreeze. After Barnes reported this information to him, Bacot notified Debbie Lightfoot, the new human resources manager, and Tom Thornton, the new plant manager. Bacot and Mims explained to Thornton and Lightfoot that the 1996 allegations had been determined to be insufficient by the previous management team. Lightfoot investigated by interviewing numerous employees.

On June 13, 1997, when Murray drove into the parking lot at work, Smoak requested Murray accompany him to Thornton's office. Thornton, Lightfoot, Smoak, and Mims were present. Thornton informed Murray he was suspended for stealing company property. When Murray asked what he was accused of stealing, Thornton refused to answer stating the Orangeburg County Sheriff's Office was investigating. Thornton did not notify Murray of a definite time for the suspension but stated someone from Holnam would get in touch with him.

Murray testified that on Thursday of the following week, Lightfoot called him and asked him to meet with Holnam representatives the following day. The same people that attended the suspension meeting were at this second meeting. Thornton again advised Murray that he had been accused of stealing company property. Thornton refused to: (1) tell Murray what he was accused of stealing; (2) identify the witnesses reporting the theft; or (3) explain the allegations. Murray initially assumed the accusation stemmed from an incident involving a coat. Murray next suspected the accusations were related to the incident with Barnes. Murray explained he had reported the incident to Smoak. Smoak denied Murray communicated this information to him.

Murray produced receipts for fuel he purchased. Thornton informed Murray the receipts were insufficient. Murray was terminated at the meeting. Murray denied stealing fuel, oil, or antifreeze from Holnam. The allegations were never reported to the sheriff's office. No one from Holnam investigated the incident between Barnes and Murray.

Barnes and Jenkins testified Mike Smoak held a meeting of his employees, including at least six workers, and told them Murray was fired for misappropriating or misusing company property. Smoak alleges he held the meeting after the suspension and notified the employees that Murray was "suspended for misuse of company property pending investigation." Murray's appeal centers on the statement made by Smoak to the employees in the meeting.

■ Murray filed this action against his former employer, Holnam, Inc., and Thomas Thornton, Holnam's plant manager, alleging wrongful discharge and slander. Holnam and Thornton moved for summary judgment. Prior to the hearing on this motion, Murray moved to amend the complaint to include a cause of action for libel. In addition, Murray withdrew the wrongful discharge claim. Although the trial judge did not specifically address the motion to amend, he considered the parties' arguments on libel and ruled on the issue.[1]

---

1. Amendment to a complaint may be impliedly consented to in a summary judgment hearing where the trial judge fails to expressly rule on the motion to amend, but the parties and trial judge treat the complaint as if amended. *See Staubes v. City of Folly Beach,* 339 S.C.

The trial judge granted summary judgment to Holnam and Thornton. Murray appeals the portion of the order granting summary judgment to Holnam on the slander claim. Murray does not appeal the grant of summary judgment to Thornton.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Quality Towing, Inc. v. City of Myrtle Beach,* 340 S.C. 29, 530 S.E.2d 369 (2000); *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); Rule 56(c), SCRCP. *See also Bruce v. Durney,* 341 S.C. 563, 534 S.E.2d 720 (Ct.App.2000) (motion for summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Vermeer Carolina's, Inc. v. Wood/ Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App. 1999). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991); *Young, supra.*

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 534 S.E.2d 688 (2000); *Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Licensing and Regulation,* 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Vermeer, supra.* Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied.

---

406, 529 S.E.2d 543 (2000). *See also* Rule 15(b), SCRCP (issues not raised by the pleadings but tried by consent of the parties shall be treated as if they had been raised in the pleadings).

*Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000); *Vermeer, supra.*

In general, if the pleadings and the evidentiary matter in support of summary judgment do not establish the absence of a genuine issue of material fact, summary judgment must be denied, even if no opposing evidentiary matter is presented. *Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999). Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Carolina Alliance, supra.*

An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP. *Brockbank, supra; Wells v. City of Lynchburg,* 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998).

## *LAW/ANALYSIS*

### I. Defamation and Agency

■ Murray contends the trial judge erred in concluding Holnam was not liable for defamation arising from Smoak's statement because Holnam did not expressly direct Smoak to make the statement. We agree.

■ In *Fleming v. Rose,* 338 S.C. 524, 526 S.E.2d 732 (Ct.App.2000), this Court explained:

> The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 514 S.E.2d 126 (1999). The focus of defamation is not on the hurt to the defamed party's feelings, but on the injury to his reputation. *See Wardlaw v. Peck,* 282 S.C. 199, 318 S.E.2d 270 (Ct.App.1984). Defamatory communications take two forms: libel and slander. *Swinton Creek Nursery, supra.* Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. *Id.*

*Fleming,* 338 S.C. at 532, 526 S.E.2d at 737. Defamation need not be accomplished in a direct manner. *Eubanks v. Smith,* 292 S.C. 57, 354 S.E.2d 898 (1987); *Tyler v. Macks Stores,* 275

S.C. 456, 272 S.E.2d 633 (1980). A mere insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain. *Eubanks, supra; Tyler, supra.*

▮▮▮ The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 506 S.E.2d 497 (1998) (Toal, J., concurring in result in separate opinion); *Fleming, supra.* A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Fleming, supra.*

▮▮▮ Here, the trial judge concluded a principal could not be vicariously liable for statements made by an agent unless the agent was expressly authorized to make the statement. However, a principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority. *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986). *See also* Restatement (Second) of Agency § 247 (1965) (master is subject to liability for defamatory statements made by servant acting within scope of his employment, or, as to those hearing or reading the statement, within his apparent authority).

The trial judge improperly concluded Holnam could not be held liable absent express authorization to Smoak.

## II. Qualified Privilege

Murray argues the trial judge erred in concluding: (1) Smoak's statement was protected by qualified privilege and (2) Smoak did not exceed the scope of the privilege.

Our Supreme Court addressed a similar issue in *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 514 S.E.2d 126 (1999):

In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege. Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it condi-

tionally privileged, and (2) the privilege is not abused. Restatement (Second) of Torts § 593 (1977); *see Bell v. Bank of Abbeville*, 208 S.C. 490, 38 S.E.2d 641 (1946). In *Bell*, this Court held:

> In determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. When one has an interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.

*Bell*, 208 S.C. at 493–94, 38 S.E.2d at 643 . . . . .

. . . .

In general, the question whether an occasion gives rise to a qualified or conditional privilege is one of law for the court. 50 Am.Jur.2d *Libel and Slander* § 276 (1995). However, the question whether the privilege has been abused is one for the jury. *Id.* Factual inquiries, such as whether the defendants acted in good faith in making the statement, whether the scope of the statement was properly limited in its scope, and whether the statement was sent only to the proper parties, are generally left in the hands of the jury to determine whether the privilege was abused. *Id.; see also* Restatement (Second) of Torts §§ 599–610. In *Fulton [v. Atlantic Coast Line R.R.*, 220 S.C. 287, 67 S.E.2d 425 (1951) ], this Court held that it was a question for the jury to determine if the publication went beyond what the occasion required and was unnecessarily defamatory. *Fulton*, 220 S.C. at 297, 67 S.E.2d at 429; *cf. Woodward*, 277 S.C. at 32–33, 282 S.E.2d at 601 ("While abuse of privilege is ordinarily an issue for the jury, . . . in the absence of a controversy as to the facts . . . it is for the court to say in a given instance whether or not the privilege has been abused or exceeded.").

*Swinton Creek Nursery*, 334 S.C. at 484–85, 514 S.E.2d at 134.

 It is the duty of the trial judge to determine if the statement is privileged. *Id.* A communication made in good

faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable. *Constant v. Spartanburg Steel Prods., Inc.*, 316 S.C. 86, 447 S.E.2d 194 (1994); *Prentiss v. Nationwide Mut. Ins. Co.*, 256 S.C. 141, 181 S.E.2d 325 (1971). Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. *Conwell v. Spur Oil Co.*, 240 S.C. 170, 125 S.E.2d 270 (1962).

We find the trial judge did not err in initially concluding Smoak was protected by a qualified privilege. Yet, the protection of a qualified privilege may be lost by the manner of its exercise. *Fulton v. Atlantic Coast Line R.R.*, 220 S.C. 287, 67 S.E.2d 425 (1951). The publisher must not wander beyond the scope of the occasion. *Constant, supra; Woodward v. South Carolina Farm Bureau Ins. Co.*, 277 S.C. 29, 282 S.E.2d 599 (1981). The privilege does not protect any unnecessary defamation. *Fulton, supra.* In order for a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require. *Id.* Where the speaker exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of the plaintiff, he will not be protected. *Id.* The existence of a duty, a common interest, or a confidential relation is not a defense. *Id.*

Whether the publication went too far beyond what the occasion required, resulting in the loss of the qualified privilege, is a question for the jury. *Id. See also Constant*, 316 S.C. at 89, 447 S.E.2d at 196 ("It is ordinarily for the jury to determine whether the privilege has been abused or exceeded.").

We find there is a genuine issue of material fact as to whether the qualified privilege was lost.

### III. Actual Malice

Murray maintains the trial judge erred in concluding there were no genuine issues of fact regarding whether Smoak made the statements with actual malice. We agree.

 If a defamation is actionable per se, then under common law principles the law presumes the defendant acted with common law malice and that the plaintiff suffered general damages. *Holtzscheiter v. Thomson Newspapers, Inc.,* 332 S.C. 502, 506 S.E.2d 497 (1998). If a defamation is not actionable per se, then at common law the plaintiff must plead and prove common law actual malice and special damages. *Id.* Slander is actionable per se if it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession. *Id.*

 However, even if the slander is actionable per se, if the communication is privileged, the plaintiff must prove actual malice. *Bell v. Bank of Abbeville,* 208 S.C. 490, 38 S.E.2d 641 (1946)(privileged communication is exception to rule that malice will be presumed where offending statement is actionable per se). A qualified privilege does not prevent liability for defamation where the statement is made with actual malice. *Eubanks v. Smith,* 292 S.C. 57, 354 S.E.2d 898 (1987). *See also Bell, supra* (in defamation action, if defendant proves qualified privilege, plaintiff may not recover unless he overcomes privilege by proving actual malice).

Common law actual malice means the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights. *Padgett v. Sun News,* 278 S.C. 26, 292 S.E.2d 30 (1982). The Court, in *Fulton v. Atlantic Coast Line R.R.,* 220 S.C. 287, 67 S.E.2d 425 (1951), discussed malice:

That the appellant believed the charges to be true did not justify it in publishing them in an improper and unjustified manner or with improper and unjustified motives. Proof that they were published in such manner and with such motives would constitute sufficient proof of malice, or malice in fact. It is not necessary that evidence must be offered of malignity or ill will, nor that those facts should be found. The time, place, and other circumstances of the preparation and publication of defamatory charges, as well as the language of the publication itself, are admissible evidence to show that the false charge was made with malice.

*Fulton*, 220 S.C. at 296, 67 S.E.2d at 429. An academic review of malice is presented in *Jones v. Garner*, 250 S.C. 479, 158 S.E.2d 909 (1968). *Jones* enunciates:

> Malice, in actions for libel or slander, is of two kinds: implied malice or malice in law, and actual malice or malice in fact.

> "Malice in law, or legal malice, is a presumption of law and dispenses with the proof of malice when words which raise such presumption are shown to have been uttered. This form of malice is not necessarily inconsistent with an honest or even laudable purpose and does not imply ill will, personal malice, hatred, or a purpose to injure." 33 Am. Jur. *Libel and Slander*, Section 111. Also, 53 C.J.S. *Libel and Slander* § 2.

> . . . .

> Actual malice or malice in fact is not presumed and must be proved. Actual malice means that the defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious indifference toward plaintiff's rights.

*Jones*, 250 S.C. at 488, 158 S.E.2d at 913–14. *See also Eubanks v. Smith*, 292 S.C. 57, 63, 354 S.E.2d 898, 902 (1987)("Actual malice is ill will, recklessness, wantonness, or conscious indifference to the plaintiff's rights.").

In *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 506 S.E.2d 497 (1998), our Supreme Court revisited malice and lifted the definition of common law actual malice from *Jones v. Garner, supra:* "[C]ommon law actual malice, that is 'the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious indifference toward plaintiff's reports.'' *Holtzscheiter*, 332 S.C. at 510 n. 3, 506 S.E.2d at 501 n. 3. The case *sub judice* is controlled by the definition of common law actual malice because the plaintiff is a private citizen. A different definition of malice is efficacious in regard to a public official or public figure:

> In defamation actions involving a "public official" or "public figure," the plaintiff must prove the statement was made

with "actual malice," i.e., with either knowledge that it was false or reckless disregard for its truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)....

. . . .

The actual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term.

*Elder v. Gaffney Ledger,* 341 S.C. 108, 113–14, 533 S.E.2d 899, 901–02 (2000). The public official or public figure definition of actual malice is inapposite to the case at bar.

 Actual malice requires that at the time of the defendant's act or omission he was conscious or chargeable with consciousness of his wrongdoing. *Padgett v. Sun News,* 278 S.C. 26, 292 S.E.2d 30 (1982). Malice may be proved by direct or circumstantial evidence. *Hainer v. American Medical Int'l, Inc.,* 328 S.C. 128, 492 S.E.2d 103 (1997); *Smith v. Smith,* 194 S.C. 247, 9 S.E.2d 584 (1940).

 Whether malice is the incentive for a publication is ordinarily for the jury to decide. *See Ponticelli v. Mine Safety Appliance Co.,* 104 R.I. 549, 247 A.2d 303 (1968) (citing 3 Restatement of Torts § 619(2)). Proof that statements were published in an improper and unjustified manner is sufficient evidence to submit the issue of actual malice to a jury. *Hainer, supra; Mains v. K Mart Corp.,* 297 S.C. 142, 375 S.E.2d 311 (Ct.App.1988). *See also Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 514 S.E.2d 126 (1999)(finding factual inquiries, such as whether the defendants acted in good faith in making the statement, questions for the jury).

 We find genuine issues of fact exist regarding whether the statement was made with actual malice. The issue of actual malice is properly a question for the jury.

## IV. Self–Publication

Murray claims the trial judge erred in finding Murray's self-publication barred him from recovering damages. We agree.

Self-publication of the allegedly defamatory statement may bar a plaintiff from recovery. David P. Chapus, Annotation,

*Publication of Allegedly Defamatory Matter by Plaintiff ("Self–Publication") As Sufficient to Support Defamation Action,* 62 A.L.R.4th 616 (1988). *See also* 50 Am.Jur.2d *Libel and Slander* § 241 (1995)(as a general rule, where a person communicates a defamatory statement only to person defamed and defamed person then repeats statement to others, publication of statement by person defamed, or "self-publication," will not support defamation action against originator of statements). In the instant case, the trial judge concluded Murray's report to Smoak and Derome Wilson, was self-publication of the "defamation of his character."

■■■ Murray's statements to Smoak and Wilson were not publications of the allegedly defamatory statements. Murray reported Barnes' absenteeism and subsequent accusations to Smoak. Murray informed Wilson about the incident and his report to Smoak. Smoak's alleged defamatory statement was that Murray was terminated for misappropriating company property.

We find Murray's statements are not comparable to Smoak's statement. Concomitantly, Murray's statements were not self-publication. The judge erred in determining Murray's self-publication bars him from recovery.

## CONCLUSION

We hold Holnam can be liable for Smoak's allegedly defamatory statement even though Smoak did not have express authority to make the statement. We rule a principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority. Further, although the trial judge properly concluded Smoak was protected by a qualified privilege, genuine issues of material fact exist regarding whether Smoak exceeded the scope of his qualified privilege. Additionally, the issue of common law actual malice is a question for the jury. Finally, Murray is not barred from recovery by self-publication. Accordingly, we REVERSE the trial judge's order granting summary judgment and REMAND for trial.

**REVERSED and REMANDED.**

HEARN, C.J., and STILWELL, J., concur.