THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Bruce S. Skinner, M.D.,       
Appellant,
 
 
 

v.

 
 
 
Trident Medical Center, L.L.C., Successor to North Trident Regional Hospital, 
 Inc. and Cheryl Aloway,        Respondents.
 
 
 

Appeal From Berkeley County
R. Markley Dennis, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-496
Submitted September 15, 2004  Filed September 30, 2004

AFFIRMED

 
 
 
Gregg E. Meyers, of Charleston, for Appellant.
C. Mitchell Brown, Elizabeth H. Campbell, of Columbia; M. 
 Dawes Cook, Lucinda Wichmann, and Wendy J. Keefer, all of Charleston, for Respondent
 
 
 

PER CURIAM:  This is an appeal from an order 
 granting respondents, Trident Medical Center, L.L.C. and Cheryl Aloway, a new 
 trial absolute following a jury verdict for Dr. Bruce Skinner on claims of defamation, 
 negligent supervision, and conversion.  We affirm. 
 [1] 
FACTUAL/PROCEDURAL BACKGROUND
This action arose out of certain events Dr. Skinner 
 alleged occurred in connection with his employment as an internist with Trident 
 Medical Center, L.L.C.  Dr. Skinner began his employment with Trident on January 
 5, 1998 in an office in St. Stephen, South Carolina.  Originally, Trident planned 
 to keep Dr. Skinner at the St. Stephen office only a short time, and thereafter 
 relocate him to a new office in the Crowfield area.  According to Trident, due 
 to market factors and structural problems with the facility, Trident decided 
 to close the St. Stephen office.  Because of several changes in circumstances, 
 Trident needed the doctor at the Crowfield location to have hospital admitting 
 privileges.  Dr. Skinner did not have those privileges, and Trident decided 
 to terminate Dr. Skinners employment per its standard contract allowing sixty 
 days notice for termination without cause.  Dr. Skinner was provided with notice 
 in April 1998 and his position was terminated in June 1998.  
During the time Dr. Skinner worked in the St. Stephen 
 office he had conflicts with the area office manager, Cheryl Aloway, over office 
 issues such as billing and the condition of the office.  Following his termination, 
 Dr. Skinner was unsuccessful in finding employment as a physician.  Thereafter, 
 Dr. Skinner instituted this action against Trident and Aloway alleging, among 
 other things, that (1) Aloway made false, slanderous statements about Dr. Skinner, 
 (2) Trident negligently supervised Aloway, and (3) Trident had converted a patient 
 list Dr. Skinner had supplied to Trident to its own use and refused to return 
 the list to Dr. Skinner.  Dr. Skinner maintained his difficulty in obtaining 
 employment as a physician was due to malicious slander by Aloway, Tridents 
 negligent supervision of Aloway, and conversion of a computer patient list of 
 Dr. Skinners.  Trident and Aloway asserted that Dr. Skinners inability to 
 find physician related employment was due to a number of factors including his 
 lack of admitting privileges and board certification, the fact that he was out 
 of work for a year and a half prior to his employment with Trident and had not 
 built up a network of relations with other doctors and hospitals, and the fact 
 that Dr. Skinners application letters gave indications to prospective employers 
 that he was unemployable.  
Dr. Skinners slander claim stems from statements 
 made by Aloway, who was an area manager for Trident overseeing eight separate 
 offices, including the St. Stephen office where Dr. Skinner worked.  Aloway 
 admittedly made statements to three other Trident employees that Dr. Skinner 
 was believed to have taken some equipment from the office that he was not supposed 
 to take, and that he had sabotaged the office by leaving water running in a 
 stopped-up sink overnight.  
Aloway testified as to what prompted her statements 
 that Dr. Skinner had sabotaged the office.  She stated Dr. Skinner was supposed 
 to fill in at the St. Stephen office while Trident awaited the arrival of a 
 doctor from Canada to take over that office.  At that time, the plan was then 
 to move Dr. Skinner to the Crowfield office.  However, the Canadian doctor had 
 trouble with his visa, possibly postponing his arrival by six months.  Dr. Skinner 
 had been complaining about the condition of the St. Stephen office, and expressed 
 concern that he would have to stay there and would never get to the Crowfield 
 office.  One of Aloways superiors, Ian Watson, was scheduled to visit the St. 
 Stephen office to evaluate the condition of the building.  Around that time, 
 Dr. Skinner made a comment to Aloway concerning whether he should make the office 
 look worse than it actually was, in anticipation of Watsons visit.  The night 
 before Watson was scheduled to come to the St. Stephan location, there was a 
 leak in the kitchen that flooded out into the hallway and onto the carpet.  
 When the plumber arrived, he could find nothing to have caused the leak, but 
 indicated he believed someone had intentionally stopped up the sink, let the 
 water runoff, and then unstopped it.  When Aloway talked to Dr. Skinner about 
 the leak, he indicated he felt the housekeeper had done it.  The housekeeper 
 denied having caused the leak, and told Aloway that when she left the building 
 that night, Dr. Skinner was still there.  Aloway theorized that if the St. Stephen 
 office were to close, Dr. Skinner would be able to get to the Crowfield location 
 sooner.  She thus came to the conclusion that, if anyone had caused the damage, 
 it was Dr. Skinner.  
As to the missing equipment, Aloway testified, 
 while Dr. Skinner had been authorized to take some equipment home with him, 
 she suspected he had taken some other equipment from the office for which he 
 had not received permission.  When she expressed these concerns to her superior, 
 she was told to simply call Dr. Skinner and ask him to bring the equipment back.  
 She was not to make a specific list of the items, but was to leave it up to 
 Dr. Skinners discretion as to what he would return.  Aloway arranged to have 
 the items returned to Tridents Crowfield office.  When she went there to pick 
 up the equipment, she was surprised and frustrated to find only one small box 
 that did not contain all the items she had expected, and questioned the staff 
 as to whether that was all that was left there.  When the staff indicated that 
 was the extent of the returned items and then questioned Aloway, she expressed 
 to the three co-workers that Dr. Skinner had taken some things.  She further 
 admitted that she may have blurted out that Dr. Skinner had also sabotaged 
 his office.  
Aloway also admitted she may have expressed her 
 beliefs regarding Dr. Skinner to another person after she was no longer employed 
 by Trident.  After leaving Trident in August 1998, Aloway went to work for an 
 association of independent physicians (IPA).  Dr. Bounds, who served on the 
 board of directors of IPA, received a call from Dr. Skinner, asking if Dr. Bounds 
 had heard Aloway say anything negative about him.  At that time, Aloway had 
 never mentioned Dr. Skinner to Dr. Bounds and Dr. Bounds informed Dr. Skinner 
 of this.  Thereafter, Dr. Bounds saw Aloway at an IPA meeting and asked her 
 what had occurred with Dr. Skinner.  Aloway then responded that Dr. Skinner 
 had stolen an EKG machine and had sabotaged the St. Stephen office.  Aloway 
 testified she only made this statement as a direct answer to an inquiry from 
 a board member who was her boss, and she would not have said anything about 
 it if it had not been raised in a question from her boss.  Aloway testified 
 that she still believed the statements she made about Dr. Skinner were true.  

Dr. Skinners conversion claim involves a list containing 
 potential patient contact information.  Dr. Skinner obtained this list of potential 
 patients in the summer of 1996, while he was employed at the Naval Hospital 
 in Charleston.  After he began his employment with Trident, Dr. Skinner gave 
 the list to Aloway so that announcements of his employment could be sent out.  
 Aloway testified she passed the list on to a secretary at Trident.  She further 
 stated that Trident had not requested the list, but Dr. Skinner had suggested 
 they use the list for the announcement and Trident agreed.  However, the list 
 ultimately was not used due to Dr. Skinners termination.  Dr. Skinner requested 
 return of the list when he was terminated, but the list was lost and Trident 
 was never able to locate it.  Trident and Aloway presented evidence that, because 
 the list was around two years old by the time Dr. Skinner left Trident and included 
 military personnel who likely had moved on, it was of little to no value.  They 
 further presented evidence that Dr. Skinner was not the rightful owner of the 
 list and that Trident had not used the list for its own benefit.  
The case was submitted to the jury under the causes 
 of action of slander, conversion, and negligent supervision.  Without objection, 
 the jury received instruction on the law of defamation which included statements 
 made under a qualified privilege [2] and/or statements invited or procured by a plaintiff such that 
 the publication was insufficient to support an action for defamation. 
 [3]   The jury further received instruction on the law of conversion. [4]   
On December 19, 2002, the jury returned its verdict.  
 Originally, the jurys verdict was as follows: (a) for Dr. Skinner on the conversion 
 claim in the amount of $250,000.00 actual damages, (b) for Dr. Skinner against 
 Aloway individually on the defamation claim for $25,000.00 actual and $25,000.00 
 punitive damages, (c) for Dr. Skinner against both Aloway and Trident on the 
 defamation claim for $1 million actual and $10 million punitive damages, and 
 (d) for Dr. Skinner against Trident on the negligent supervision claim in the 
 amount of $10 million actual damages.  The court and the parties agreed that 
 actual damages could not differ for the defamation claim against Aloway and 
 the defamation claim against Trident, which was only vicariously liable.  In 
 addition, the court and the parties agreed it was illogical to award greater 
 damages for the defamation claim than the negligent supervision claim.  Accordingly, 
 the court instructed the jury to clarify its verdict on the defamation and negligent 
 supervision claims, but did not resubmit the conversion action to the jury.  
 When the jury returned after further instructions, it found for Dr. Skinner 
 in the amount of $10 million for negligent supervision against Trident, and 
 against both Trident and Aloway in the amount of $10 million actual damages 
 and $10 million punitive damages for slander.  Dr. Skinner subsequently elected 
 to recover the slander award rather than the negligent supervision award.  
In an order filed on June 23, 2003, the trial judge 
 exercised his discretion as the thirteenth juror and granted Trident and Aloway 
 a new trial.  He found the evidence did not support the verdicts and justice 
 had not prevailed.  In the alternative, the trial judge concluded a new trial 
 was warranted because the verdicts were so excessive as to indicate they were 
 the result of passion, prejudice, caprice, or some other influence outside the 
 evidence presented.  Dr. Skinner appeals the order granting a new trial.
LAW/ANALYSIS
Dr.
Skinner argues the trial court erred in finding the evidence did not justify the
verdicts on the conversion and defamation awards and therefore the order
granting a new trial under the thirteenth juror doctrine should be reversed. 
We disagree.

The
thirteenth juror doctrine is a vehicle by which the trial judge may grant a new
trial absolute when he finds that the evidence does not justify the verdict.  Folkens v. Hunt, 300 S.C. 251, 254, 387 S.E.2d 265,
267 (1990).  Such a ruling has also
been termed a granting of a new trial upon the facts.  Id.  The
trial judge has the authority to grant a new trial outright when, sitting as the
thirteenth juror charged with the duty of seeing that justice is done, he is
convinced that a new trial is necessitated on the basis of the facts in the
case.  Graham v. Whitaker,
282 S.C. 393, 401, 321 S.E.2d 40, 45 (1984). 
This doctrine is so named because it entitles the trial judge to sit, in
essence, as the thirteenth juror when he finds the evidence does not justify the
verdict, and then to grant a new trial based solely upon the facts. 
Norton v. Norfolk S. Ry. Co., 350 S.C. 473, 478, 567 S.E.2d 851,
854 (2002).  [T]he trial judge is
the thirteenth juror, possessing the veto power to the Nth degree, and, it must
be presumed, recognizes and appreciates his responsibility, and exercises the
discretion vested in him with fairness and impartiality. 
Worrell v. South Carolina Power Co., 186 S.C. 306, 313-14, 195
S.E. 638, 641 (1938).  As the
thirteenth juror, the trial judge can hang the jury by refusing to agree to a
jury verdict that is otherwise unanimous.  Id. 
The effect is the same as if the jury failed to reach a verdict,
resulting in a new trial.  Folkens,
300 S.C. at 254, 387 S.E.2d at 267.  Neither
judge nor jury is required to give reasons for the outcome. 
Id.  Further, a trial
judges order granting or denying a new trial upon the facts will not be
disturbed unless his decision is wholly unsupported by the evidence, or the
conclusion reached was controlled by an error of law. 
Id.  
 

 As to the conversion claim, Dr. Skinner contends 
 the information contained in the patient list would have enabled him to 
 establish his own practice and the $250,000 award therefore was not excessive.  
 He further argues that, because the defamation was per se, 
 general damages are presumed, and that, along with evidence presented regarding 
 malicious actions by Trident and Aloway as well as Dr. Skinners resulting 
 unemployment and the intangible injuries suffered by him, justified the 
 award.  
 In reviewing the trial courts decision to 
 grant a new trial under the thirteenth juror doctrine, this court does not, 
 however, look to whether the evidence presented below could support the 
 jurys verdict.  The granting of a new trial upon the facts is not the equivalent 
 of granting a directed verdict.  McEntire v. Mooregard Exterminating 
 Servs., Inc., 353 S.C. 629, 632, 578 S.E.2d 746, 748 (Ct. App. 2003).  
 Unlike a directed verdict motion, in considering whether to grant a new 
 trial under the thirteenth juror doctrine, the trial judge weighs the evidence, 
 and he need not view it in a light most favorable to the opposing party.  
 Id.  Though the trial judge may be compelled to submit the issues 
 to the jury, it does not follow that he cannot subsequently grant a new 
 trial absolute under the thirteenth juror doctrine.  Worrell, 186 
 S.C. at 313-14, 195 S.E. at 641.  Rather, our review is limited to consideration 
 of whether evidence exists to support the trial courts order.  Folkens, 
 300 S.C. at 255, 387 S.E.2d at 267.  Unless the decision to grant a new 
 trial on the facts is wholly unsupported by the evidence or the trial judges 
 conclusion was controlled by an error of law, the order will not be disturbed 
 on appeal.  Id.  Where conflicting evidence exists on the contested 
 issues, the trial courts ruling is not wholly unsupported by the evidence, 
 and its decision will not be overturned.  Id. at 255, 387 S.E.2d 
 at 267.
 Under our limited scope of review, we cannot 
 say the courts ruling is wholly unsupported by the evidence.  Conflicting 
 evidence was presented by the parties as to whether the statements made 
 by Aloway were privileged and/or invited.  Further, the evidence was in 
 conflict as to whether Trident was properly excused from returning the patient 
 list to Dr. Skinner because the list was simply lost rather than intentionally 
 withheld, whether Dr. Sinner had title to or the right to possession of 
 the list, or whether the list had any value such that the failure to return 
 it resulted in any damage to Dr. Skinner.  Further, there is no indication, 
 and appellant does not argue, that the trial judge was controlled by an 
 error of law, such as the application of an incorrect standard.  Accordingly, 
 we find no error in the trial judges decision to grant a new trial pursuant 
 to the thirteenth juror doctrine 
 [5] and the order below is
 AFFIRMED
 HEARN, C.J., and HUFF and KITTREDGE, JJ., concur.

 
 
 [1] We decide this case without oral argument pursuant to Rule 215, SCACR.
 
 
 
 [2] A communication made in good faith on any subject matter in which 
 the person communicating has an interest or duty is qualifiedly privileged 
 if made to a person with a corresponding interest or duty even though it 
 contains matter which, without this privilege, would be actionable.  Murray 
 v. Holnam, Inc., 344 S.C. 129, 140-41, 542 S.E.2d 743, 749 (Ct. App. 
 2001).  Communications between officers and employees of a corporation 
 are qualifiedly privileged if made in good faith and in the usual course 
 of business.  Id.         
 
 
 
 [3] It is a sound principle of law that a person cannot invite or provoke 
 another to make a slanderous charge against him, and then sue such person 
 for damages on account of such charge.  Boling v. Clinton Cotton Mills, 
 163 S.C. 13, 24, 161 S.E. 195, 199 (1931).                 
 
 
 
 [4] Conversion is the unauthorized assumption and exercise of the right 
 of ownership over goods or personal chattels belonging to another, to the 
 alteration of the condition or the exclusion of the owners rights.  Crane 
 v. Citicorp Natl Servs., Inc., 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993).  
 It is a wrongful act which emanates by either a wrongful taking or wrongful 
 detention.  Regions Bank v. Schmauch, 354 S.C. 648, 667, 582 S.E.2d 
 432, 442 (Ct. App. 2003).   To establish the tort of conversion, it is 
 essential that the plaintiff establish either title to or right to the possession 
 of the personal property.  Crane, 313 S.C. at 73, 437 S.E.2d at 
 52.  
 
 
 
 [5] Because we affirm the trial judges order granting a new trial pursuant 
 to the thirteenth juror doctrine, we need not address Dr. Skinners assertion 
 that the trial judge also erred in his alternative ruling that a new trial 
 was warranted because the verdicts were so excessive as to indicate they 
 were the result of passion, prejudice, caprice, or some other influence 
 outside the evidence presented.